Littleton, Judge,
delivered the opinion of the court:
The plaintiff sues to recover $45,894.46 representing Federal income taxes and interest paid for the calendar years 1944 and 1945, with interest thereon. The question presented is whether the Cuban production tax paid by plaintiff during
1944 and 1945 was a tax paid in lieu of a foreign income tax within the meaning of section 181 (h) of the Internal Itev-enue Code of 1939, as amended, 26 U. S. C. § 131.
Section 131 provides:
* * * (h) Credit for taxes in lieu of income, etc., taxes.— For the purposes of this section and section 23 (c) (1), the term “income, war-profits, and excess-profits taxes” shall include a tax paid in lieu of a tax upon income, war-profits, or excess-profits otherwise generally imposed by any foreign country or by any possession of the United States. * * *
If the Cuban production tax paid by plaintiff for 1944 and 1945 was paid in lieu of a foreign income tax within the meaning of section 131 (h), plaintiff is entitled under section 131 (a) to credit those taxes against the income taxes imposed by the United States. The pertinent part of section 131 (a) provides:
*725 * * * Allowance of credit. — If the taxpayer chooses to have the benefits of this section, the tax imposed by this chapter, * * * shall be credited with:
(1) Citizens and domestic corporations. — In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; * * *
The plaintiff is a corporation organized on December 16, 1942, under the laws of the State of Delaware. Since its organization plaintiff’s business has been that of manufacturing and selling a soft drink beverage in Cuba under the trademark “Coca-Cola.”
In 1900, the provisional government of Cuba directed publication of Military Order No. 463, thereby establishing a general profits tax. This was a tax on the profits of corporations and was the first general income tax established in Cuba.
On February 27,1903, a production tax was enacted which levied a tax on the manufacture, sale, or consumption of certain classes of articles such as alcoholic liquors, tobacco, playing cards, soft drinks and prepared water. This tax was enacted to guarantee payment of a $35,000,000 loan and is known as the Speyer Loan production tax. As a result of the Cuban administrative interpretation, payers of the production tax were not required to pay the profits tax.
In 1927, the profits tax of 1900 was amended and, inter alia, payers of the production tax were specifically exempted from payment of the profits tax. In 1931, the profits tax was revised, the base was broadened to include the profits of individuals and unincorporated concerns, and the rate was made progressive. Also, those companies or persons paying the production tax of 1903 were continued to be specifically exempt from payment of the profits tax for the reason that “they are already taxed.” On December 31, 1941, a surtax of 20 percent was imposed on the profits tax.
On December 31, 1941, the President of Cuba sanctioned Resolution Law No. 1 which imposed an income tax on the net profits of the natural or juridic persons who engaged in the manufacture of liquor, cider, table waters, soft drinks, *726 tobacco and playing cards (payers of tire production tax), and on salaries, wages, pensions, dividends, interest, proceeds, and any other hind of personal revenue. On April 5,1943, the rates with respect to both the profits tax and the income tax were increased and a so-called tax on capital was imposed.
The plaintiff paid the Cuban production tax for the years 1944 and 1945. The plaintiff also paid for those years the Cuban income tax and the so-called tax on capital. In computing the Cuban income taxes for those years, deductions were allowed for the amount of the production taxes paid.
In its United States tax returns for the years 1944 and 1945, plaintiff claimed foreign tax credits under section 131 (a) for the Cuban income taxes and so-called taxes on capital, as income taxes paid in a foreign country. Credits were also claimed under section 131 (a) for those years for the production taxes, as taxes paid in lieu of foreign income taxes within the meaning of section 131 (h).
The Commissioner of Internal Eevenue allowed the credits for the Cuban income taxes and so-called taxes on capital,[1] but denied the credits for the production taxes. The Commissioner allowed deductions from income for the production taxes. The Commissioner assessed an income tax deficiency for 1944 in the amount of $26,548.72, plus interest of $3,880.10, or a total of $30,428.82, and for 1945 in the amount of $14,238.95, plus interest of $1,226.69, or a total of $15,465.64. The plaintiff paid these deficiencies and interest in the total amount of $45,894.46 on September 4, 1947. Timely claims for refund were filed, rejected, and this suit followed.
The defendant concedes that the Cuban profits tax was before and after 1941 an income tax of general application. The defendant further concedes that prior to the promulgation of the 1941 income tax law the payment of the production tax was the payment of a tax in lieu of an income tax within the meaning of section 131 (h).
The plaintiff contends that the payment of the production tax continued to be in lieu of the profits tax after 1941. The defendant contends that the 1941 income tax was equiva *727 lent to the profits tax and was imposed as a substitute for the profits tax and, therefore, payers of the production tax, after 1941, were, in effect, paying the profits tax through the payment of the income tax. We agree with the plaintiff’s contention for the reason that the only thing that exempted payers of the production tax from paying the profits tax, which is admitted to be an income tax of general application, is the specific provision in the profits tax law that exempts payers of the production tax from paying the profits tax. If the plaintiff had not paid the production tax, it would have been required to pay the profits tax under the terms of the profits tax law, regardless of whether it paid the income tax.
The defendant’s contentions are not supported by the record. The record fails to show that the 1941 income tax was equivalent to the profits tax. The rates of the profits tax were considerably higher than the rates of the income tax. We see no reason in the record to label the income tax as a substitute for the profits tax — it was simply an additional tax imposed on the payers of the production tax and others who were not directly paying an income tax. If the income tax imposed on the payers of the production tax was equivalent to, and intended to be a substitute for, the profits tax, it would appear that in reality payment of the income tax was in lieu of the profits tax, although technically it was not.
The defendant states that since every Cuban taxpayer paid either the income tax or the profits tax and never both, the income tax is paid in lieu of the profits tax. The record does not sustain this contention for the reason that it fails to show that the income tax was paid in lieu of the profits tax. If the 1941 income tax had a specific provision stating that those persons who paid the income tax would not be required to pay the profits tax, it then could be said that payment of the income tax was in lieu of the profits tax because the profits tax would not be required to be paid regardless of whether the production tax was paid. However, there is no such provision in the 1941 Cuban income tax law. The only thing that relieves payers of the production tax from paying the profits tax is the specific exemption as to the profits tax contained in the profits tax law. If the pro *728 duction tax were repealed the payers of the production tax would be required to pay the profits tax under the language of the profits tax law regardless of whether they also paid the income tax, in the absence of some further statutory provision to the contrary. If the income tax were abolished the payers of the production tax would have to continue paying the production tax or they would be required to pay the profits tax.
The fact that plaintiff was allowed a deduction for its production taxes in computing its Cuban income tax does not, of course, affect the allowance of credits for the actual taxes paid. The deduction merely reduces the amount of Cuban income taxes and thus reduces the amount of the credit.
The plaintiff paid the income taxes and the so-called taxes on capital and has been allowed credits for them. The plaintiff paid the production taxes in lieu of the profits tax within the meaning of section 131 (h) and should accordingly be allowed credits for those taxes under section 131 (a).
The plaintiff is entitled to recover. Judgment is entered for plaintiff in the amount of $45,894.46, with interest as provided by law.
It is so ordered.
Laramore, Judge; Madden, Judge; Whitaker, Judge; and Jokes, Qhief Judge, concur.
FINDINGS OE FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner George H. Foster, makes the following findings of fact:
1. Plaintiff is a corporation organized on December 16, 1942, under the laws of the State of Delaware. Since its organization, the plaintiff’s business has been that of manufacturing and selling a soft drink beverage in Cuba under the trademark “Coca-Cola”.
2. At all times material plaintiff kept its books and filed ite Federal income and declared value excess profits tax returns on the calendar-year basis and in accordance with the accrual method of accounting.
*729 3. Following the revolt of the people of Cuba against the Spanish Government and the ensuing Spanish-American War, a peace treaty was signed in Paris on December 10, 1898, wherein Spain relinquished all rights to Cuba. The treaty provided for temporary occupation of Cuba by American military forces. The American military occupation of Cuba lasted until May 20, 1902.
4. During the period of the American military occupation the governmental affairs of Cuba were administered by American military governors.
5. On November 13,1900, the American military governor of Cuba, General Leonard Wood, directed the publication of Order No. 463, which provided for a “profits tax” of general application. It provided in part as follows:
The Military Governor of Cuba, upon the recommendation of the Secretary of Finance, directs the publication of the following order, in substitution of Civil Order No. 306, suspended by Civil Order No. 312, c. s., these Headquarters:
I. From this date, Order No. 106 of July 11th, 1899, Headquarters Division of Cuba and all other provisions in force containing the form of State and Municipal Taxation of Banks and Companies, enumerated in sections 6,6,7 and 8 of Tariff Second of the Industrial Tax are hereby modified in accordance with the following articles:
II. The following shall pay taxes to the State at the rate of 8 per cent, of their net profits:
(a) Banks of issue and discount transacting business either on real estate or on personal property.
(b) Stock Companies, except mining companies, savings banks and such Government loan and pledge companies as may be officially recognized and included accordingly in the list of tax exemptions.
III. The following shall pay taxes to the State at the rate of 6 per cent, of their net profits:
(a) Railroads of general service, or namely, those destined to public exploitation of the transportation of passengers and the traffic of merchandise, either belonging to companies or to private parties conformably to legislation in force on the matter.
(b) Shipping Companies.
TV. Insurance Companies shall pay 2% per cent, of the premiums annually collected from the insured. *730 From said tax are exempted Mutual Insurance Corporations where no profits are distributed and whose operations may consist only in assessing the stock holders for the proportional amount of damages that any of them may have suffered.
The tax on the commission of the agents is hereby suppressed.
The administration, investigation and collection of the tax shall be in accordance with the provisions in force.
*****
XI. Banks, Corporations and Companies exercising solely industries that are expressly comprised in the Tariff of Industrial Tax shall only pay the Municipalities the quotas corresponding to the kinds of industries that they exercise in each municipal district.
6. On May 5,1902, the first Congress of Cuba convened in Havana. On May 20, 1902, Major General Leonard Wood formally surrendered his executive powers to Estrada Palma, President of Cuba.
7. Under the Cuban Constitution, laws are enacted by Congress and must be “sanctioned” or approved by the President before they are put into effect. If the President refuses to sanction a law, he must return it to Congress within ten days after it has been submitted to him, and the measure may still become a law if it is then approved by a special two-thirds majority of both Houses of Congress.
A presidential decree, on the other hand, is a measure enacted by the President of the Republic pursuant to the authority granted to him by Article 142 of the Constitution of the Republic of Cuba, which provides as follows:
142. It will be the function of the President, assisted by the Cabinet:
(a) To sanction and promulgate the laws, to execute them and see to their execution; to issue, when Congress has not done so, regulations for their best execution; and to. issue the decrees and orders which are advisable for this purpose and for whatever is pertinent to the government and administration of the Nation, without in any case contravening what is established by law.
Although it is sometimes difficult to determine whether a certain matter may be regulated by a presidential decree *731 as being “pertinent to tbe government and administration of tbe Nation,” there are certain matters in respect to which it is specifically provided that they must be governed solely by congressional laws, and not by presidential decrees or orders. Article 134 of the Constitution includes, among the faculties of Congress which may not be delegated, the following:
(a) To draw up codes and laws of a general character; to determine the regimen of elections; to enact provisions relative to the national, the provincial and the municipal administrations, and all other laws and resolutions that it deems advisable on any other matters of public interest or that are necessary for the effectiveness of this Constitution.
(b) To establish the taxes and imposts of a national character that are necessary for the needs of the Nations
(c) To discuss and approve the budget of expenditures and revenues of the Nation.
Presidential Decree 1117 of 1939 (referred to in finding 17) containing the “Regulations for the General Tax on’ Profits,” is a typical instance of the exercise by the President of the regulatory powers given him under paragraph (a) of Article 142. In accordance with the cited constitutional provision, this decree could not have been issued if Congress had reserved for itself the right to regulate the profits tax law, which was then the law of January 29, 1931 (still in effect as amended).
A presidential decree may in no sense contravene or modify a law of Congress. On the other hand, a law may repeal or modify a decree, in the same manner as it may repeal or modify a prior law.
Therefore, regulations for a certain tax enacted by a presidential decree in the absence of congressional action for this specific purpose, have full force and effect and may be legally vulnerable only insofar as they may result in actually broadening or limiting the scope of the tax, thus resulting in a modification of the law which such decree purports to regulate. For example, Presidential Decree 2008 of December 28,1926 (referred to in finding 11) was intended as a measure “clarifying” or interpreting Article XI of Order No. 463 of 1900, in the sense that this provision should not be construed *732 as establishing an exemption from the tax on profits in favor of stock companies paying an industrial tax to the municipalities. Decree 2008 met with strong opposition on the ground that in issuing a decree which under the guise of an interpretation really enacted a new tax, the executive had overstepped the constitutional bounds of its powers. To meet this opposition, the Government found it expedient to obtain a law of Congress (law of January 27,1927, referred to in finding 12) confirming the provisions of Decree 2008.
8. On February 27, 1903, the Congress of Cuba duly enacted and the President of Cuba approved the so-called Speyer Loan production tax. This is the tax which plaintiff claims should be allowed as a credit under the provisions of section 131(h) of the Internal Revenue Code of 1939, and which, accordingly, presents the issue of this case. This law provided in part as follows:
tomas estrada palma, Constitutional President of the Republic of Cuba.
hereby makes known: That Congress has enacted and he has approved the following
law:
Article 1. — The President of the Republic shall contract, in behalf of the Nation and as soon as possible, a loan of thirty-five million dollars in gold coin of the United States of America, at the minimum rate of issue of ninety per cent of its value and with interest at the maximum rate of five per cent per annum.
*****
Article 3. — In order to secure and effect the payment of the amortization and interest of the Loan, a special permanent tax shall be created on the manufacture, sale or consumption of the articles hereafter mentioned:
*****

Section fourth,:

A. Every case of twenty-four half bottles of artificial water manufactured in Cuba shall pay five cents.
B. Every siphon of one liter capacity of artificial water manufactured in Cuba shall pay one-half cent.
C. Every cylinder of artificial water manufactured in Cuba shall pay five cents.
*733 D. Every case of twenty-four half bottles of artificial cider (name of a refreshment) manufactured in Cuba shall pay five cents.
E. Artificial waters or prepared refreshments which may be imported will pay, in addition to the Customs duties, the special tax in the same amount as those manufactured in the country.
‡ ‡

Section eleventh:

For the duration of the special tax established by this Law, all articles or objects subject thereto may not bs the subject of new industrial taxes levied by the State, the. Province or the Municipalities.
9. On January 25,1904, the Congress of Cuba duly enacted and the President of Cuba approved a law supplementing and amending the law of February 27,1903. Said law of January 25,1904, provided in part as follows:
tomas estrada palma, Constitutional President of the Kepublic of Cuba,
hereby makes known: That Congress has enacted and I have approved the following
law:
Article first: The Law of February 27,1903 regarding the thirty five million dollar loan shall be amended as follows:
* * * * *

Section four:

A. Every case of twenty-four half bottles of artificial water, manufactured in Cuba, will pay five cents.
B. Every siphon of one liter capacity of artificial water manufactured in Cuba will pay one-half cent.
C. Every cylinder of artificial water manufactured in Cuba will pay five cents.
D. Every case of twenty-four half bottles of artificial cider (refreshment known by that name), manufactured in Cuba, will pay five cents.
E. Artificial waters or prepared refreshments which may be imported will pay, in addition to the Custom duties, the special tax in the same amount as those manufactured in Cuba.

*734
Section eleven:

For the dui’ation of the special tax established by this Law, all articles or objects subject thereto may not be subjected to new industrial taxes by the State, the Province or the Municipalities.
10. On May 11, 1904, the 35 million-dollar loan was obtained and the Speyer Loan production taxes were pledged to service said loan.
11. In 1926 Presidential Decree No. 2008 was issued to require all stock companies theretofore exempt from the profits tax to file under the profits tax with respect to transactions taking place after July 21, 1925. This decree provided in part as follows:
FIRST: That all stock companies be required to file their balance sheets covering all transactions effected after July 21,1925, for the purposes of the tax to which they are subject pursuant to Paragraph “b” of Article II of Order 463 of 1900, inasmuch as Article XI of the said Order contains no exemption from State profits taxes, which are established in a general way under the said Paragraph “b”, indicating only, together with the following Article XII and applying to the entities mentioned therein, the sole municipal taxes that may be collected from the said companies; without prejudice to ruling in the future as to operations prior to the aforementioned date.
12. Since Decree No. 2008 construed Article (or section) XI of Military Order 463 of 1900 as not establishing an exemption from the profits tax for those companies paying an industrial tax to the municipalities, the decree met strong opposition on the grounds that the President, in issuing it, had really enacted a new tax and had thus overstepped the constitutional bounds of his powers. To meet this criticism, the Government found it expedient to obtain a law of Congress (law of January 27,1927) confirming the provisions of Decree No. 2008. Article I of this law specifically exempted from payment of the profits tax those organizations or companies subject to the production tax of February .27, 1903. This law provided in part as follows:
i, gerardo machado y morales, President of the Republic of Cuba,
Make known: That Congress has passed, and I have approved, the following
*735 law:
article i. Article XI of Order 463 of 1900 does not exempt the Banks, Organizations or Companies to which, it refers, from the National taxes, fixed.and regulated by Article II of this Order, limiting itself to indicating that they will pay the Municipality only the quota to which they are subject because of the industries in which they are engaged, that is, to the exclusion of all other Municipal taxes.
Organizations or companies which manufacture or sell the articles or objects subject to the Law of February 27, 1903, as well as corporations publishing newspapers, and companies engaged in the lease of city properties, which pay by way of Municipal tax a certain percentage of the revenues or profits which they receive, are excepted from the tax established in said Article II.
article ii. All taxes on account of the 8% on profits, imposed by section “b” of Article II of Order 463 of 1900, are remitted, up to July 20, 1925, the date of repeal ox the 4% tax, the conditions of that Order continuing in force from that date, and said companies in consequence being obligated to pay the tax fixed on profits.
In consequence, residential Decree 2008 of. 1926 is confirmed, as respects all effects thereof. Nevertheless, the balances of corporate operations for the year which expired on December 31, 1926, shall pay 8% on fifty per centum of the profits for that year. Previous and subsequent balances will be taxed in accordance with the provisions of Order 463 of 1900 and those established by this Law, and other current regulations.
13. On July 6, 1928, the Congress of Cuba duly enacted and the President of Cuba approved a law which made the aforesaid exemption set forth in Article I of the law of January 27, 1927 (i. e., the provision specifically exempting those companies paying the production tax from payment of the profits tax) retroactive to operations undertaken since July 21, 1925. This law provided in part as follows:
Art. XLI. The exception established in the second paragraph of Article I of the Law of January 27,1927, which clarifies the provisions of Article II in its relation to Article 2, paragraph (b) of Military Order 463 of 1900, shall be understood to extend to operations undertaken since July 21,1925 by corporations or soeie *736 ties subject to the payment of the taxes created by Art. 3 of the Law of February 27, 1903, and Law of January 25, 1904 on “Alcoholic Beverages, Domestic and Foreign,” “Manufacture and Use of Playing Cards,” since this has been the true spirit of the exemption contained in Article 1, paragraph 2, of the Law of January 27, 1927.
14. On September 25, 1928, Presidential Decree 1626, relating to the profits tax enacted as Military Order 463 of 1900, as amended by the law of January 27, 1927, and as further amended by the law of July 6, 1928, was enacted. This law specifically exempted certain persons and companies from payment of the profits tax, among which were the corporations and partnerships which paid the production tax and, also, foreign navigation companies engaged in transporting freight and passengers between domestic and foreign ports. Article 71 of said decree provided:
Article 71: The following shall be exempted from this tax:
(a) Official Savings and Loan Funds and Government Pawnshops. Unofficial Savings and Loan Funds shall be considered among those required to pay the tax under paragraph (b) of Article 68 of this Decree;
lb) Newspaper publishing corporations;
(c) Corporations or partnerships which manufacture or sell the articles or objects taxed by the Law of February 27,1903, listed under Article 41 of the Law of July 6,1928;
(d) Companies engaged in the leasing of urban properties and which pay to the Municipalities a percentage of the revenues or profits which they receive;
(e) Foreign navigation companies engaged in transporting freight and passengers between domestic and foreign ports;
(f) Persons or companies engaged in the sale of chattels or real estate on installments.
15. On January 29, 1931, the Congress of Cuba duly enacted and the President of Cuba approved a law which provided in part as follows:
i, geraedo machado t morales, President of the Republic of Cuba,
Make known: That Congress has passed, and I have approved, the following
*737 law:
CHAPTER FIRST
MODIFICATIONS OF THE TAX ON ALCOHOLIC LIQUORS, TOBACCO, PLAYING CARDS, SOFT DRINKS AND PREPARED WATERS
Article I. The first, second, fourth and sixth classes of the Law of February 27,1903, as amended by the Law of January 25,1904, covering the tax for the $35,000,000 loan, are modified and drawn to read as follows:
*****
SECOND CLASS
DOMESTIC AND FOREIGN PREPARED WATERS AND SOFT DRINKS
A. Each case of 24 half bottles or smaller containers, of prepared waters, manufactured in Cuba shall pay 5c.
B. Each case of 24 half bottles or smaller containers of prepared soft drinks shall pay 5c.
C. Each siphon of one liter capacity of prepared water manufactured in Cuba shall pay y2 cent.
D. Each cylinder shall pay 5c.
E. Each liter of prepared water and prepared soft drinks, imported, shall pay, in addition to Customs duties, 5c.
* * * * *
CHAPTER SIXTH
GENERAL TAX ON PROFITS
Article I. From the time this law becomes effective a contribution or tax is established on net profits or benefits according to the tariffs hereinafter copied.
Article II. The payment of this contribution or tax shall be made by: Every person, natural or juridic, Cuban or foreign, by reason of net profits or benefits obtained in Cuban territory, or which are paid, within or without the Republic, by natural or juridic persons domiciled or residing therein, or which are paid in Cuban territory even though the debtor is located outside thereof.
$ # * * ❖
TARIFF THIRD
ON PROFITS OF MERCHANTS AND MANUFACTURERS
Individual merchants and manufacturers and all commercial and industrial companies or organizations, ex *738 cepting those comprised in Tariff Fourth, shall pay in accordance with the following scale:

Peromt

From $1,200 to $3,000- 2
More than $3,000 to $5,000-1— 3
More than $5,000 to $10,000_ 4
More than $10,000 to $50,000- 6
More than $50,000 to $100,000- 8
More than $100,001 to $200,000_ 8y2
More than $200,001 to $300,000_ 9
More than $300,001_ 10
TARIFF FOURTH
ON THE PROFITS OF BANKS AND ORGANIZATIONS
Payments shall be made by:
(1) Corporations, silent partnerships the investment in which is represented by shares of stock, and those of limited liability with respect to the profit on the shares, if any, and banks and bankers and all associations under the general law, whether industrial or mercantile, organized or which may be organized in Cuba and abroad, for the operation of the business of manufacture of sugar, and individuals who engage in that same industry, in accordance with the following scale:

Percent

Up to $100,000_ 8
$100,001 to $200,000_ 8Ys¡
$200,001 to $300,000_ 9
$300,001 upward_ 10
(2) Railways and domestic navigation companies, operating in coastwise service or on the high seas, located in the country, 6% on profits received.
Foreign navigation companies engaged in transporting freight and passengers between domestic and foreign ports shall be exempt from the tax on profits and shall pay, instead, 3% on the gross revenues obtained for freight and passengers taken aboard in domestic ports, without prejudice to their taxation under other forms, according to the legislation in force.
sfs # % # #
EXEMPTIONS
Article Y. There are exempt from this tax, in addition to those profits to which this law refers:
tfc Hí ❖ ❖ sfe #
(8) Enterprises or individuals, on the profits derived from the publication of newspapers, magazines, book *739 lets and books, as well as those others obtained by an establishment devoted to superior or elementary instruction in any matter, science, art or craft, and the persons or companies referred to in Article I of Chapter First of this Law, in connection with the Law of February 27, 1903, as it was modified by the Law of January 25,1904, covering the tax for the $35,000,000 loan, since they are already taxed.
Jfi ' % $ ‡ * $ $
(16) Insurance companies, which shall continue to pay in the same manner as at present.
tic # $ $ $ # $
KTCPTOATifl
Article XXVII. Articles second and third of Military Order No. 463 of 1900, so far as they relate to the payment of the 8% and 6% taxes by certain companies and enterprises, are repealed; and likewise the exemption of the commissions of insurance agents referred to in Article VI of the Law of January 27, 1927, such agents paying in accord with section (9) of Article fourth of this Chapter of the present Law.
16. The first regulations promulgated under the law of January 29, 1931, were set forth in Decree No. 690, dated May 14,1931. In accordance with the law, these regulations expressly exempted from the profits tax those companies or individuals registered to pay the production tax; foreign navigation companies engaged in transporting freight and passengers between domestic and foreign ports; and insurance companies. These regulations provided in part as follows:
DECEEE NO. 690.
In use of the faculties conferred on me by the Constitution of the Eepublic, by the Fifteenth of the General Provisions of Chapter Fourteenth of the Emergency Tax Law, of January 29 of this year, and by other laws in force, on proposal of the Secretary of the Treasury,
I EESOLVE:
To approve, for the administration and collection of the General Tax on Profits to which Chapter Sixth of the said Law of January 29,1931, refers, the following:
*740 REGULATIONS
* # * * *
CHAPTER III
TAX ON NET PROFITS
Those obligated to Pay this Tax
Article 41st. The tax on net profits obtained in Cuba shall be paid by:
(a)Private parties or individuals who engage in any commerce or industry and commercial and industrial companies and organizations not comprised in those specified in subsequent paragraphs, payment being in accordance with the following tariff:

Percent

From $1,200 to $3,000_ 2
More than $3,000 to $5,000_ 3
More than $5,000 to $10,000_ 4
More than $10,000 to $50,000_■_ 6
More than $50,000 to $100,000_ 8
More than $100,000 to $200,000_ 8%
More than $200,000 to $300,000_ 9
More than $300,000_ 10
(b)_ Corporations, silent partnerships the investment in which is represented by shares of stock, and those of limited liability with respect to the profit on the shares, if any, and banks and bankers and all associations under the general law, whether industrial or mercantile, organized or which may be organized in Cuba and abroad, for the operation of the business of manufacture of sugar, and individuals who engage in that same industry, and mining companies, in accordance with the following scale:

Percent

Up to $100,000_ 8
From $100,001 to $200,000_ 8%
$200,001 to $300,000_ 9
$300,001 upward_ 10
(c)Railways and domestic navigation companies operating in coastwise service and on the high seas, located in the country, 6% on profits received.
* * * * *
Exemptions
Article 42d. The following are understood as exempt from the payment of this tax:
*741 (a) Foreign navigation companies engaged in transporting freight and passengers between domestic and foreign ports, since they pay under another heading;
iH $ $ ‡ ‡
(f) Companies or individuals who are registered as taxpayers under the taxes of the Loan of $35,000,000, in accordance with the law of February 27, 1903, and subsequent concordant ones;
V *{• $
(1) Insurance companies, which shall continue to pay the tax in the same manner as at present;
# $ $ $ $
17. On May 15,1939, “Regulations for the General Tax on Profits,” were duly promulgated by Presidential Decree No. 1117, replacing the aforesaid regulations promulgated under Decree No. 690. The regulations set forth in Decree No. 1117 were in effect during the taxable years herein involved. Like their predecessor regulations set forth in Decree No. 690, these regulations exempted, in accordance with the Law of January 29, 1931, those companies or individuals registered to pay the production tax; foreign navigation companies engaged in transporting freight and passengers between domestic and foreign ports; and insurance companies.
The regulations promulgated in Decree No. 1117 provided in part as follows:
NOW, THEREFORE: In use of the faculties conferred on me by the Constitution of the Republic, and other provisions, and on proposal of the Secretary of the Treasury,
I RESOLVE :
To issue the following Regulations for the General Tax on Profits, in substitution for Decree 690, of May 14,1931, and all its modifications:
*****
CHAPTER II
TAX ON NET PROFITS
Those obligated to pay this tax
Article 11. The tax on net profits obtained in Cuba shall be paid by:
(a) Private parties or individuals who engage in any commerce or industry and commercial and industrial *742 companies and organizations not comprised in those specified in subsequent paragraphs, payment being in accordance with the following tariff.

Percent

Up to $25,000.00_ 6.
On the excess over $25,000.00 tip to $50,000.00- 8
On the excess over $50,000.00 up to $100,000.00_ 10
On the excess over $100,000.00 up to $500,000.00- 12
On the excess over $500,000.00 up to $1,000,000.00_ 15
On the excess over $1,000,000.00 upwards- 20
(b) Corporations, silent partnerships the investment in which is represented by shares of stock, and those of limited liability with respect to the profit on the shares, if any, and banks and bankers and all associations under the general Law, whether industrial or mercantile, organized or which may be organized in Cuba and abroad, of the operation of the business of manufacture of sugar, and individuals who engage in the same industry, and mining companies, in accordance with the following scale:

Percent

Up to $100,000.00_ 10
On the excess over $100,000.00 up to $500,000.00_ 12
On the excess over $500,000.000 up to $1,000,000.00_ 15
On the excess over $1,000,000.00 upwards- 20
*****
Exemptions
Article 12: The following are understood as exempt from the payment of this tax:
(a) Foreign navigation companies engaged in transporting freight and passengers between domestic and foreign ports, since they pay under another heading;. *****
(e) Companies or individuals that are registered as taxpayers under the taxes of the Loan of $35,000,000, in accordance with the Law of February 27, 1903, and subsequent concordant ones; this exception being limited to the operations subject to those taxes;
*****
(h) Mutual insurance organizations which are not of a commercial nature, in accordance with the provisions of the Code of Commerce;
* * He . Hi *
(k) Insurance and bonding companies on their insurance and bonding operations properly speaking and without prejudice to paying the tax on items correspond-
*743 ing to other operations they effect subject to taxes, as well as of the tax of 4%% on premiums to which they are subject;
* * <! Hi *
Given at the Presidential Palace, Havana, May 15, 1939.
FedeRico Laredo,

President.

Oscar Garcia Montes,

Secretary of the Treasury.

18. On September 8, 1941, the Congress of Cuba duly enacted and the President of Cuba approved Law No. 28 which provided in part as follows:
Article First: This Law is denominated “Emergency Tax Law” and shall govern according to the following sections:
Section 1. A surtax is established, up> to twenty per centum (20%), exigible beginning from the efféctive date of this Law and until the new General Budgets of the Nation, approved by Congress, become effective, on all tariffs, scales and amounts of the taxes and contributions of the Nation now in force.
The President of the Republic is authorized to suppress or reduce the aforesaid surtax by Decree, in the proportion that he deems pertinent, taking into consideration the state of the revenues and the nature of each tax. Said Decree must be submitted for the ratification of Congress within the 5 days following its promulgation being understood to be in force until it is repealed by the President or Congress.
19. On September 17,1941, the President of Cuba duly executed Decree No. 2597 which consisted of the regulations dealing with Law No. 28 enacted on September 8,1941, establishing the surtax of 20 percent on the profits tax. This decree specifically applied the 20 percent surtax on the tax on profits referred to in Tariffs Third and Fourth of the law of January 29,1931. This decree stated in part as follows:
First: The surtax authorized by Section 1 of Article First of the Emergency Tax Law No. 28, of September 8,1941, published in the Official Gazette of the Republic on the 9th, will be applied to the following taxes and tariffs, in the form which is specified in each case.
*744 (i) The tax on. profits referred to in Tariffs Third and Fourth of said Emergency Tax Law of January 29, 1931, will be surtaxed 20%;
20. On November 22,1941, Law No. 31 was duly enacted, and it provided in part as follows:
Article I. The President of the Republic is authorized to concert with the Export and Import. Bank of Washington, in Spanish: Banco de Exportación.e Im-portación de Washington, domiciled in the City of Washington, District of Columbia, United States of America, hereinafter called “the Bank”., a credit operation whereby the Republic of Cuba will borrow from the Bank, all at one time or in successive partial amounts, until June 30,1946, a sum of money that shall not exceed twenty-five million dollars ($25,000,000.00) in money of the United States of America, for the purposes prescribed in this law.
*****
Article XXV. To guarantee the credit operation authorized by this Law, the following taxes are pledged:
* * * * *
II. The tax of 10 cents for each sack of sugar of 325 pounds, established by Article second of the Law of July 31, 1917.
*****
Article XXVI. To provide the General Budget of the Nation with the resources equivalent to the proceeds of the tax of 10 cents for each sack of sugar, that have been pledged by the preceding Article, the following taxes are created:
1. A surtax of 20% on the amount of the tariff now in force for contributions of banks and companies, created by Tariff Fourth of Chapter Sixth of the Emergency Tax Law of January 29,1931.
21. On November 25, 1941, the President of Cuba duly issued Decree No. 3211, which provided in part as follows:
first : That the taxes and surcharges established in Law No. 31, of November 22,1941, be exacted beginning with the date on which the Regulations are promulgated, that regulate the collection of said taxes.
seooNd: To maintain in its full force the surcharge established in Law No. 28, of September 8, 1941, in the same amount and extent that has been fixed heretofore.
*745 22. On December 31, 1941, the President of Cuba duly issued Decree No. 3520 which, provided in part as follows:
now therefore ; In use of the faculties conferred on me, with the advice of the Cabinet, and on proposal of the Minister of the Treasury,
i resolve:
First: The surtaxes referred to in Decree No. 2597, of September 17,1941, are extended from January 1,1942, in the manner that they have been in force, and with the modifications of the present Decree.
* * * *
Third: The surtax of 20% which, in accordance with paragraph (i) of Article First of Decree 2597, applies to the Tariff Fourth of the tax on profits, is eliminated, said surtax continuing in force with respect to the profits of the Tariff Third.
* # ifc *
Fifth: On January 1,1942, the suspension established by Decree 3211, of November 25,1941, with respect to the taxes contained in Law No. 31, of November 22,1941, is set aside and in consequence, beginning with said January 1, 1942, all of the taxes and surtaxes specified in Article XXV and XXVI of the aforesaid Law No. 31 will be exactable.
23. Early in December of 1941, the Republic of Cuba declared war on the Japanese Empire, the German Reich, and the Kingdom of Italy. The Congress of the Republic of Cuba declared a state of national emergency by Special Law No. 34 of December 19, 1941, and in said law delegated to the Cuban Cabinet to be exercised by it during the term of 45 calendar days, certain functions proper to the Congress, among which was that of establishing certain taxes. Pursuant to the authority so granted, the Cabinet of Cuba on December 31, 1941, approved and the President of Cuba sanctioned Resolution Law No. 1. This law imposed taxes on luxuries, sugar production, incomes, and exportation of money. The income tax was imposed by Chapter Third. This chapter states in part as follows:
i, Fulgencio batista t zaldivar, President of the Republic of Cuba,
make known: That the Cabinet has approved, and I have sanctioned, the following:
*746 chapter third
Income Tax
Section First
Article I. A tax is established on the net revenues of the natural or juridic persons who are engaged in the manufacture of alcohol, brandy and strong liquor, alcoholic ethers, alcoholares, alcoholic extracts, essences for liquors or any product not especially classified that contains ethylic alcohol; wines, sparkling wines, fruit wines and vermouths, cider, beer, table waters and soft drinks; cigars, cigarets, smoking tobacco, chewing tobacco and playing cards, in accordance with the following
Scale: Percent
Up to $25,000.00_ 6
On the excess over $25,000.00 up to $50,000.00_ 8
On the excess over $50,000.00 up to $100,000.00_ 12
On the excess over $100,000.00 up to $500,000.00_ 15
On the excess over $500,000.00_ 20
Article XX. Until the corresponding authority provides otherwise, the provisions, surtaxes and penalties contained in Chapter Second, et seq., of Decree No. 1117, of May 15,1939, will be applied in the liquidation, supervision and collection of this tax.
Section Second
Article III. A tax is established on the salaries, wages or compensations and pensions of all kinds, received in a continual or occasional manner, which will be collected in accordance with the following
Scale First

Percent

From $1,200.00 up to $2,400.00_ 1
On the excess over $2,400.00 up to $3,600.00_ 2
On the excess over $3,600.00 up to $6,000.00_ 3
On the excess over $6,000.00 up to $10,000.00_ 5
On the excess over $10,000.00 up to $18,000.00_ 7
On the excess over $18,000.00 up to $50,000.00_ 9
On the excess over $50,000.00_ 10
Article IY. A tax is established on the honorariums, fees, or emoluments from the exercise of the liberal professions or from any other profession, art, or trade, or lucrative occupation, of a permanent or occasional character, in accordance with the following
*747 Scale Second

Percent

From $2,400.00 Tip to $3,600.00- 1. BO
On the excess oyer $3,600.00 up to $6,000.00- 3.75
On the excess over $6,000.00 up to $10,000.00--- 6.25
On the excess over $10,000.00 up to $18,000.00- 8.75
On the excess over $18,000.00 up to $50,000.00- 11.25
On the excess over $50,000.00- 12.50
Article V. A tax is established on the income from all kinds of salaries, wages, compensation and pensions, honorariums, fees or emoluments, or from personal or real property, securities, stocks, bonds, obligations, “títulos” (another word for securities) of all kinds, dividends, interest, proceeds and any other kind of personal revenue coming from similar or analogous sources, in accordance with the following
Seale Third

Percent

From $5,000.00 up to $6,000.00- 2
On the excess over $6,000.00 up to $8,000.00- 2.60
On the excess over $8,000.00 up to $10,000.00- 3.25
On the excess over $10,000.00 up to $12,000.00- 4.25
On the excess over $12,000.00 up to $14,000.00- 5.50
On the excess over $14,000.00 up to $16,000.00- 7
On the excess over $16,000.00 up to $18,000.00- 8.50
On the excess over $18,000.00- 10
The remainder of the law dealing with the income tax merely set forth rules for applying Scales First, Second, and Third set forth in Section Second. Any portions of this law not herein quoted are incorporated by reference.
24. On April 5, 1943, the Congress of Cuba duly enacted and the President of Cuba approved a law which increased the rates with respect to both the profits tax and the income tax. This law states in part:
i, Fulgencio batista x zaldivar, President of the Eepublic of Cuba,
make known : That Congress has passed and I have approved the following
Law:
*****
CHAPTER IV
Tax on Capital
Article 14. An annual tax of three pesos ($3.00) is established for each one thousand pesos or fraction of *748 one thousand pesos, on the capital with which they are operating in Cuba, calculated at its real value, of the organizations or companies of all kinds, whether civil or mercantile, domestic or foreign.
Article 15. Without prejudice to the tax on profits, referred to in the Law of January 29,1931, and its modifications, which will continue to be paid as heretofore, a tax is established of fifteen per centum (15%) additional on any profits in excess of ten per centum of the capital taxed in the manner specified in the preceding Article.
* * * * *
CHAPTER X
Tax on Profits
Article 52. The following paragraph is added to Tariff Second of Article III of Chapter Sixth of the Law of January 29,1931:
* * * * *
Article 53. The sale of Tariff Third, of Article III, Chapter Sixth, of the Emergency Tax Law of January 29,1931, as modified by the Law of June 23,1938, shall be worded as follows:

Percent

Up to $25,000_ 9
The excess over $25,000 up to $50,000_ 12
The excess over $50,000 up to $100,000_ 15
The excess over $100,000 up to $500,000_ 18
The excess over $500,000 up to $1,000,000_ 22
The excess over $1,000,000_ 30
Article 54. The rate of tax established by the Law of June 23,1938, for the taxpayers comprised in Section (1) of Tariff Fourth of Article III, Chapter Sixth, of the Emergency Tax Law of January 29, 1931, will be replaced by the following scale:

Percent

Up to $100,000_ 15
The excess over $100,000 up to $500,000_ 18
The excess over $500,000 up to $1,000,000_ 22.5
The excess over $1,000,000_ 30
CHAPTER XVII
Income Tax
Article 75. Article I, Section First, Chapter Third, of Resolution-Law No. 1, of December 31,1941, will be worded as follows:
*749 Article I. A tax is established on the net income of the natural or juridic persons who are engaged in the manufacture of alcohol, brandy, and strong liquor, alcoholic ethers, alcoholates, alcoholic extracts,, essences for liquors or any product not especially classified that contains ethylic alcohol; wines, sparkling wines, fruit wines and vermouths, cider, beer, table waters and soft drinks; cigars, cigarets, smoking tobacco, chewing tobacco, matches and playing cards, in accordance with the following
SCALE: Percent
Up to $25,000.00- 9
On the excess over $25,000.00 up to $50,000- 12
On the excess over $50,000.00 up to $100,000- 15
On the excess over $100,000.00 up to $500,000- 18
On the excess over $500,000.00 up to $1,000,000- 22.5
On the excess over $1,000,000.00- 30
25. When Congress authorized an external fifty million-dollar loan by the law of October 9, 1922, a provision was embodied (Article 8) authorizing the President of the Eepublic:
* * * to destine, bind or obligate for these purposes (security and redemption of ths Loan) the proceeds.of all taxes or revenues in force at the present time, which the Government may deem necessary or convenient to pledge, provided the said proceeds, though pledged to service other obligations, are sufficient to permit their application for the purposes set forth hereunder.
As a result of this authorization, in clause Ninth of the contract executed between Morgan & Company and the Cuban Government, covering the issuance of the fifty million-dollar loan, it was established, as a guarantee of the loan, that there was specifically and expressly effected:
(b) The surplus of the proceeds of the taxes established in 1904 to secure the $35,000,000 Loan contracted with Speyer & Company * * *.
After total redemption of the Speyer loan, all of the revenues obtained from the special taxes established by the laws of 1903 and 1904 and not just the “surplus” thereof, as theretofore, became part of the guarantee of the 1923 Morgan loan.
26. On April 2, 1948, the Second Civil and Contentious-Administrative Chamber of the Court of Appeals of the *750 Havana District rendered its Decision No. 360. This case involved the question whether or not a taxpayer engaged in the business of manufacturing perfumes in Havana was exempt from the profits tax by reason of his being registered to pay the production tax. In this case the taxpayer had registered to pay the production tax but had not actually paid such tax. The law relating to the profits tax with which the court dealt was that set forth in Decree No. 1117 of 1939 (the regulations dealing with the law of January 29, 1931, and with which the United States Court of Claims is concerned in the instant case). The court held against the taxpayer, stating that registration to pay the production tax alone was not sufficient to exempt the taxpayer from paying the profits tax. The court held that in order to be exempt from the profits tax, the production tax must actually be paid. The court stated on this point:
WHEREAS: that the exemption from the profits tax sought in the administrative proceeding and now in the contentious appeal, is based, fundamentally, on the interpretation and application of Article 12 section e of Decree 1117 of 1939, which grants this benefit to companies and individuals registered as taxpayers under the Thirty-Five Million Loan Taxes; which exemption is to be granted or not, depending on whether the criterion of the appellant that the “registration” is sufficient for the exemption is accepted, or in turn the argument of the Government is accepted that the registration, in itself, does not entitle to exemption, but that it is necessary, in addition, to be effectively and actually a taxpayer, * * *
WHEREAS: such elementary rules preclude, as the appellant has done, that one should seek application of one single precept which is favorable to him, disregarding all the others contained in a single codified body of law and such others as bear a relation of compliance and addition thereto; hence: although under the letter (f) of Article 42 of Decree 690 of 1931, “companies and individuals registered as taxpayers under the Thirty-Five Million Loan Taxes, pursuant to the Law of February 27, 1903 and the subsequent complementary laws” are considered exempt from the tax on profits, it cannot be ignored that in reproducing this provision, Section (e) of Article 12 of Decree 1117 of 1939 added, “this exception being limited to the operations subject to these taxes” (thus giving the concept of taxation and not of mere *751 registration) and especially, that the spirit and purpose oí tlie said rule, the reason for the exemption, are clearly set forth in ordinal eight of Article 5 of the Law of Economic Emergency, as amended by the law of February 27,1904 to the effect that the same is granted ' in connection with profits because the latter “are already subject to the thirty-five million loan tax”; which leads without any doubt to the conclusion that it is the direct taxation under this latter tax and not the mere registration in the Registry of Taxpayers which determines the exemption, which having been denied by the Government, did not impair any preestablished administrative right in favor of the taxpayer.
27. This decision of the Court of Appeals was affirmed by Decision No. 775 of the Supreme Court of Cuba on December 22,1949.
28. For the year 1944, the plaintiff accrued and paid to Cuba a Speyer Loan production tax in the amount of $164,563.14.
29. After the allowance of the Speyer Loan production tax of $164,563.14, less refund of the 1943 Speyer Loan production tax in the amount of $850.98, net amount of $163,712.16, as a deduction, plaintiff’s net income for the year 1944, as computed under the laws of Cuba, was $537,303.29. Plaintiff accrued and paid to Cuba as a manufacturer of soft drinks a tax on this net income under the provisions of Resolution Law No. 1, enacted on December 31,1941, as amended by the law of April 5,1943, in the amount of $93,143.24, computed as follows:

Profit Rate (percent) Tam

Up to $25,000-9 $2,250.00
From $25,000 to $50,000_ 12 3,000.00
From $50,000 to $100,000_ 15 7,500.00
From $100,000 to $500,000_ 18 72,000.00
From $500,000 to $537,303.29-22% 8,393.24
Total_:_ 93,143.24
30.For the year 1944 plaintiff’s capital which was subjected to the Cuban tax on capital amounted to $4,850,000. For the year 1944 plaintiff in accordance with Chapter IV entitled “Tax on Capital” of the law of April 5,1943, accrued and paid to Cuba a 15% additional tax upon profits computed as follows:
*752 Net income-$537,303.29
Less: 10% of capital subject to tax on capital_ 485,000.00
Balance subject to 15% additional_ 52,303.29
15% additional, tax upon income_ 7,845.49
31.The total of the three tax liabilities for the year 1944, was $265,551.87, and consisted of the following:
Speyer Loan production tax (Finding 28)-$164,563.14
Manufacturer of soft drink tax upon net income (finding 29)_^ 93,143.24
15% additional tax upon income (finding 30)_ 7,845.49
Total_ 265,551.87
32.On or about March 15, 1945, plaintiff filed with the collector of internal revenue at Wilmington, Delaware, its Federal corporation income and declared value excess profits tax return for the calendar year 1944. In said return, plaintiff claimed no deduction for any of the three taxes accrued and paid to Cuba, as set out in finding 31. In said return, plaintiff claimed a foreign tax credit under section 131 of the Internal Eevenue Code for said taxes on the grounds that:
(a) The Speyer Loan production tax was a tax paid or accrued during the year to a foreign country in lieu of a tax upon income, otherwise generally imposed, within the meaning of subparagraph (h) of Section 181;
(b) The tax on plaintiff as a manufacturer of a soft drink and the 15% additional tax were income taxes paid or accrued during the year to a foreign country, within the meaning of subparagraphs (a) (1) of Section 131.
Said return showed no United States corporation income or declared value excess profits tax after the foreign tax credit.
33. For the year 1945, the plaintiff accrued and paid to Cuba a Speyer Loan production tax in the amount of $212,389.65.
34. After the allowance of the Speyer Loan production tax of $212,389.65 as a deduction, plaintiffs net income for the year 1945 as computed under the laws of Cuba was $675,-400.42. Plaintiff accrued and paid to Cuba as a manufacturer of a soft drink a tax on this net income under the pro *753 visions of Eesolution Law No. 1 enacted on December 31, 1941, as amended by the law of April 5,1943, in the amount of $124,215.09, computed as follows:

Bate Profit (percent) Tax

Up to $25,000_ 9 $2,250.00
From $25,000 to $50,000_ 12 3,000.00
From 50,000 to $100,000_ 15 7,500.00
From $100,000 to $500,000_ 18 72,000.00
From $500,000 to $675,400.42_ 22% 39,465.09
Total- 124,215.09
35. For the year 1945 plaintiff’s capital which was subjected to the Cuban tax on capital amounted to $5,000,000. For the year 1945 plaintiff in accordance with Chapter IY entitled “Tax on Capital” of the law of April 5, 1943, accrued and paid to Cuba a 15% additional tax upon profits in the amount of $26,310.06, computed as follows:
Net income_$675,400.42
Less: 10% of capital subject to tax on capital_ 500,000.00
Balance subject to 15% additional tax_ 175,400.42
15% additional tax upon income_ 26, 310.06
36. The total of the three tax liabilities for the year 1945, was $362,914.80, and consisted of the following:
Speyer Loan production tax (finding 33)_$212,389.65
Manufacturer of soft drinks tax upon net income (finding 34)- 124,215.09
15% additional tax upon income (finding 35)_ 26,310.06
Total_'_ 362,914. 80
37. On or about March 15, 1946, plaintiff filed with the collector of internal revenue at Wilmington, Delaware, its Federal corporation income and declared value excess profits tax return for the calendar year 1945. In said return, plaintiff claimed no deduction for any of the three taxes accrued and paid to Cuba as set out in finding 36. In said return plaintiff claimed a foreign tax credit under section 131 of the Internal Eevenue Code for said taxes on the ground that:
(a) The Speyer Loan production tax was a tax paid or accrued during the year to a foreign country in lieu of a tax upon income otherwise generally imposed within the meaning of subparagraph (h) of section 131.
(b) The tax on plaintiff as a manufacturer of a soft *754 drink and the-15% additional tax were income taxes paid or accrued during the year to a foreign country within the meaning of subparagraph (a) (1) of Section 131.
Said return showed no United States income or declared value excess profits tax after the foreign tax credit.
■ 38. On June 27, 1947, the Commissioner of Internal Revenue determined and allowed as follows:
(a) Determined that no part of the Speyer Loan production tax accrued and paid to Cuba by the plaintiff for the years 1944 and 1945 was a tax paid or accrued during said years to a foreign country in lieu of a tax upon income otherwise generally imposed within the meaning of subparagraph (h) of section 131.
(b) Allowed said Speyer Loan production tax as deductions for 1944 and 1945, respectively.
(c) Determined that plaintiff’s net taxable income for the year 1944 was $531,406.04, and that its net taxable income for the year 1945 was $686,517.08.
(d) Determined that plaintiff’s Federal income tax liability, prior to any credit for foreign taxes for the year 1944 was $127,537.45, and that its Federal income tax liability for the year 1945, prior to any credit for foreign taxes was $164,764.10.
(e) Allowed plaintiff a credit for foreign taxes for the year 1944, in the amount of $100,988.73, which consisted of the manufacturer of soft drinks tax of $93,143.24 and the 15% additional tax of $7,845.49 paid to Cuba for that year.
(f) Allowed plaintiff a credit for foreign taxes for the year 1945, in the amount of $150,525.15, which consisted of the manufacturer of soft drinks tax of $124,-215.09 and the 15% additional tax of $26,310.06 paid to Cuba for that year.
(g) Determined a deficiency as the result of the foregoing adjustments, plus certain other minor adjustments not material herein, in plaintiff’s Federal income tax liability for the year 1944 of $26,548.72 and a deficiency in plaintiff’s Federal income tax liability for the year 1945 of $14,238.95.
39. Thereafter, the Commissioner of Internal Revenue made an assessment against plaintiff of said deficiency for the year 1944 of $26,548.72, plus interest thereon of $3,880.10, a total of $30,428.82, and made an assessment against the plaintiff of said deficiency for the year 1945 of $14,238.95, plus interest thereon of $1,226.69, a total of $15,465.64.
*755 ' 40. Plaintiff on September 4, 1947, paid said amounts of $30,428.82 and $15,465.64 to the collector of internal revenue at Wilmington, Delaware.
41. On February 25,1948, plaintiff filed with the collector of internal revenue at Wilmington, Delaware:
(a) A claim on Treasury Department Form 843 for the refund of the $30,428.82 tax and interest so paid for the year 1944. A true and correct copy of said claim is attached to the petition, and is by reference made a part hereof.
(b) A claim on Treasury Department Form 843 for the refund of the $15,465.64 tax and interest so paid for the year 1945. A true and correct copy of said claim is attached to the petition, and is by reference made a part hereof.
42. On November 2, 1948, the Commissioner of Internal Eevenue by registered mail and pursuant to the provisions of section 3772(a) (2) of the Internal Eevenue Code of 1939, gave notice to plaintiff of the disallowance in full of said claims for refund.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that it recover of and from the United States forty-five thousand eight hundred ninety-four dollars and forty-six cents ($45,894.46), with interest as provided by law.

 The Commissioner of Internal Revenue held this tax to be an income tax for purposes of allowing a foreign tax credit. Rev. Rui. 56-51,1. R. B. No. 8, p. 9.