The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA

v.

The UNITED STATES.

No. 55–59.

United States Court of Claims.

June 7, 1963.

Francis A. Goodhue, Jr., New York City, for plaintiff. Arthur E. Schmauder, Frank G. Koch, Newark, N. J.; John H. Perkins, Jr., Peter J. Sturtevant, Dewey, Ballantine, Bushby, Palmer & Wood; and Arnold I. Burns, New York City, were on the briefs.

Earl L. Huntington, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner, and Mitchell Samuelson, Washington, D. C., were on the brief.

Paul F. Myers, John E. Skilling, Washington, D. C.; Joseph H. Collins, George E. Walton, Bernard G. Hildebrand, Gerard J. Talbot, New York City, Robert H. Myers, and Williams, Myers & Quiggle, Washington, D. C., filed a brief for the Metropolitan Life Insurance Company, amicus curiae.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.*

This is an action to recover an alleged overpayment by plaintiff of Federal income tax for the calendar year 1949. Plaintiff is a mutual life insurance company organized under the laws of the State of New Jersey. In 1949, it was engaged in the insurance business in the United States and Canada.

During the year 1949, plaintiff paid a tax imposed by the Provinces of Ontario and Quebec of two percent on the insurance premiums collected that year from policyholders residing in the respective provinces. Plaintiff also paid the same tax imposed by the Dominion of Canada on premiums collected in 1949 from policyholders residing in Canada outside of the Provinces of Ontario and Quebec. By payment of these premiums taxes, plaintiff was excused from payment of Canadian income taxes by express provisions of law within each of the three Canadian jurisdictions. The combined total alien premium tax payment amounted to $558,513.57. Plaintiff's first claim is that by virtue of Internal Revenue Code provisions, $304,-855.84 of this total Canadian tax payment was allowable as a credit against its United States income tax for 1949, but was wrongfully assessed and collected by the Collector of Internal Revenue. Plaintiff seeks recovery of this amount plus interest as a "foreign tax credit" under sections 131(a) and (h) and 205 of the 1939 Code.

Section 131(a) as amended, provided in 1949 that the income tax of a domestic corporation " * * * shall be credited with * * * the amount of * * * any * * * income taxes paid or accrued during the taxable year to any foreign country * * *." For the purposes of this section (131), the term "income * * * taxes shall include a tax paid in lieu of a tax upon income * * otherwise generally imposed by any foreign country."

*Trial Commissioner Mastin G. White at the direction of the court, prepared an opinion and recommended conclusions of

The provision for a foreign tax credit for a tax paid "in lieu of a tax upon income" in subsection (h) of section 131 of the Code was added to this section by section 158(f) of the Revenue Act of 1942, 56 Stat. 798, 858. The reason for this enactment was clearly stated by the Senate Finance Committee, (S.Rep. No. 1631, 77th Cong. p. 131):

"Your committee believes further amendments should be made in section 131. Under that section as it now stands, a credit is allowed against United States tax for income * * * taxes paid or accrued to any foreign country * * *. In the interpretation of the term 'income tax,' the Commissioner, the Board, *and the courts have consistently adhered to a concept of income tax rather closely related to our own, and if such foreign tax was not imposed upon a basis corresponding approximately to net income it was not recognized as a basis for such credit.* Thus if a foreign country in imposing income taxation authorized, for reasons growing out of the administrative difficulties of determining net income or taxable basis within that country, a United States domestic corporation doing business in such country to pay a tax in lieu of such income tax *but measured, for example, by gross income, gross sales* or a number of units produced within the country, *such tax has not heretofore been recognized as a basis for a credit. Your committee has deemed it desirable to extend the scope of this section.* Accordingly, subsection (f) of section 160 provides that the term 'income * * * taxes' shall * * * include a tax paid by a domestic taxpayer in lieu of the tax upon income * * * which would otherwise be imposed upon such taxpayer by any foreign country or by any possession of the

law in this case, which was of substantial assistance.

United States. * * *" [Emphasis supplied.]

This statement is a clear expression of intent to widen the judicial interpretation that had previously been given to the term "income taxes" in subsection (a) of section 131 as being limited to foreign taxes based on *net income,* (i. e. on gain or. profit), in order to include a tax measured by *gross income* or *gross sales* as a basis for tax credit.

This legislative purpose in adding "taxes paid in lieu of" income taxes for foreign income tax credit was recognized by the United States Court of Appeals for the Ninth Circuit in the case of Northwestern Mut. Fire Ass'n v. Commissioner of Internal Revenue, 181 F.2d 133 (9th Cir., 1950). That case involved the question whether the premiums taxes paid by a United States mutual fire insurance company to the Dominion of Canada for 1942 and 1943 could be credited against its Federal income taxes for those years under section 131(h) of the Internal Revenue Code of 1939, as amended. The court said (181 F.2d p. 135):

"[2] * * * The report of the Senate Finance Committee on proposed § 131(h) expressly states that foreign taxes measured by 'gross sales' would constitute a credit. * * Manifestly gross sales have no relation to profits. Gross sales are however analogous to 'net premiums.' * * *

"[3] Both the language and the legislative history of Int.Rev.Code, § 131(h), force us therefore to conclude that the Canadian 'net premium' tax imposed upon petitioner, like the American counterpart imposed by Int.Rev.Code, § 207(a)(2), was 'in lieu of a tax upon income' within the meaning of Int. Rev.Code, § 131(h). It follows that petitioner is entitled to ·the credits claimed in the returns for tax years 1942 and 1943, and that the deficiencies assessed by the Commissioner were erroneous."

Defendant has attempted to distinguish this case from the present one because gross premiums of *fire* insurance companies involved in the Northwestern Mut. Fire Ass'n case, supra, were includable in gross income for Federal tax purposes, whereas premiums on *life* insurance, presently involved, are not included in the income of a life insurance company for Federal taxation. This distinction was eliminated by the language of the Senate Finance Committee Report previously quoted, which expressly contemplated that the scope of section 131(a) was to be extended to include "a tax in lieu of such income tax but measured, for example, by *gross income, gross sales,* or a number of units is supplied within the county." [Emphasis supplied.] Whatever legal distinctions were drawn prior to enactment of this amendment as to the basis for taxing the income of *fire* insurance companies as distinguished from *life* insurance premiums collected in determining foreign income tax credit, the life insurance premiums taxes paid by plaintiff in Canada were measured by *gross income* or by *gross sales.*

The Ontario premiums tax for 1949 was imposed by section 4 of The Corporations Tax Act of Ontario (3 Geo. VI (1939), c. 10, as amended). That section declared in subsection (1) that "Every insurance company shall pay a tax in respect to life insurance premiums of two per centum calculated upon the gross premiums received during the fiscal year from policyholders resident in Ontario," excluding premiums returned and certain other items. The same statute provided in subsection (1) of section 14 that " * * * every incorporated company * * * which transacts business in Ontario, shall for every fiscal year of such company pay a tax of seven per centum calculated upon the net income of the incorporated company;" but subsection (3)(h) of section 14 expressly provided that "Any incorporated company paying taxes under this Act as * * * [an] insurance company" should not be subject to the tax imposed

by section 14. Therefore, plaintiff was excused from paying the Ontario tax calculated on the net income of corporations because it was an insurance company paying a premiums tax under another section of the same statute. It seems obvious that if the Ontario premiums tax was not an "income" tax, it was certainly a tax paid "in lieu of" income tax and, therefore, that it clearly came within the scope of subsection (h) of section 131 of the Internal Revenue Code of 1939, as amended.

The premiums tax which plaintiff paid to the Province of Quebec for 1949 was imposed by subdivision 3 of section 3 of the Quebec Corporation Tax Act (11 Geo. VI (1947), c. 33). This subdivision imposed on "every insurance company, a tax of two per centum on every premium received by the company * * * in respect of the business transacted in Quebec." Other subdivisions of section 3 (it contained a total of 19 subdivisions) imposed taxes of various kinds on other types of companies, such as banks, loan companies, navigation companies, etc. Then section 6 of the same statute provided that "every company * * * contemplated by subdivisions 1, 4, 5, 6, 7, 8, 11, 13, 14, 15, 16, 17, 18 and 19 of section 3 * * * shall pay annually a tax equivalent to seven per centum of the net revenue of their respective financial year * * *." The failure of section 6 in the portion just quoted to refer to subdivision 3 of section 3, covering insurance companies, had the effect of excusing insurance companies from the payment of the 7 percent tax on net revenue imposed by section 6.

The premiums tax which plaintiff paid to the Dominion of Canada in 1949 was payable under the Dominion's Excise Tax Act (Rev.Stat. of Can. 1927), c. 179, as amended).[1] That act provided in section 14(1) that "Every company authorized under the laws of the Dominion of Canada or of any province thereof to transact the business of insurance * * shall pay to the Minister a tax of two per centum upon the net premiums received by it in Canada less net premiums paid for reinsurance to companies or associations to which this section applies * * *." The term "net premiums" was defined to mean "in the case of a company transacting life insurance, the gross premiums received by the company other than the consideration received for annuities, less premiums returned and less the cash value of the dividends paid or credited to policyholders." However, an insurance company was permitted to deduct the amounts of any premiums taxes paid to any Provinces of Canada, and in 1949 only the Provinces of Ontario and Quebec were imposing such taxes. Another statute of the Dominion of Canada, The Income Tax Act (11–12, Geo. VI. (1948), c. 52, as amended), imposed in section 36 a tax on the net income of corporations, the rate on the taxable income, or on the taxable income earned in Canada, being 10 percent of the first $10,000 and 33 percent of amounts over $10,000. However, it was provided in section 29 of The Income Tax Act that the taxable income of a life insurance corporation should be "the aggregate of the amounts credited to shareholders' account or otherwise appropriated for or on account of shareholders during the year," less certain specified amounts. As plaintiff is a mutual insurance company, it does not have any shareholders; and accordingly, it was excused by section 29 of The Income Tax Act of Canada from paying the income tax imposed on corporations by that act.

Thus, it will be seen that plaintiff in 1949 was excused from paying the respective income taxes imposed by the Provinces of Ontario and Quebec and by the Dominion of Canada on the net income or net revenue of corporations, but that plaintiff was required to pay, and did pay, to each of these jurisdictions a tax

[1]. The Dominion tax on premiums received by life insurance companies was first imposed in 1942, pursuant to an amendment (6 Geo. VI. c. 32), to the Special War Revenue Act. The title of the Special War Revenue Act was changed in 1947 to the Excise Tax Act (11 Geo. VI. c. 60).

measured in terms of its gross income or gross sales, i. e., on premiums received.

We conclude that the tax on insurance premiums which plaintiff paid within the three Canadian tax jurisdictions involved was "a tax paid in lieu of a tax upon income * * * otherwise generally imposed" within these three foreign tax jurisdictions, within the meaning of sec. 131(h) of the Internal Revenue Code. Accordingly, we need not also determine whether these premiums taxes were "income * * * taxes paid or accrued during the taxable year" to the Canadian jurisdictions, within the meaning of sec. 131(a).

Plaintiff was entitled to utilize the premiums taxes paid in Canada in 1949 as a credit against its 1949 Federal income tax.

## ADJUSTMENT FOR CERTAIN RESERVES

During the year 1949, life insurance companies were taxed under section 201 (a) (1) of the Internal Revenue Code of 1939, as amended by section 163(a) of the Revenue Act of 1942, 56 Stat. 798, 867, on their "adjusted normal-tax net income." The term "adjusted normal-tax net income" was defined in section 202(a) of the 1939 Code, as amended in 1942, 56 Stat. at p. 870, to mean "the normal-tax net income [2] minus the reserve and other policy liability credit provided in subsection (b) [of section 202] and *plus the amount of the adjustment for certain reserves provided in subsection (c)* [of section 202]" [Emphasis supplied.] Subsection (c) of section 202, as amended in 1942, 56 Stat. at p. 870, defined the phrase "adjustment for certain reserves" in the following language:

"(c) ADJUSTMENT FOR CERTAIN RESERVES.—In the case of a life insurance company writing contracts other than life insurance or annuity contracts (either separately or combined with noncancellable health and accident insurance), the term 'ad-

justment for certain reserves' means an amount equal to 3¼ per centum of the unearned premiums and unpaid losses on such other contracts which are not included in life insurance reserves. For the purposes of this subsection such unearned premiums shall not be considered to be less than 25 per centum of the net premiums written during the taxable year on such other contracts."

In preparing its income tax return for the year 1949, and in computing "the amount of the adjustment for certain reserves" that was to be added to its normal-tax net income in accordance with section 202(c) of the Internal Revenue Code of 1939, as amended, plaintiff, with respect to the item of "unpaid losses," included 3¼ percent of the amount ($1,078,876.87) held by it as reserves against unaccrued liabilities arising from its cancellable health and accident insurance contracts. Plaintiff did not include in this computation 3¼ percent of the amount ($2,469,553.50) of its accrued but unpaid liabilities arising from such contracts.

Subsequently, the Internal Revenue Service assessed a deficiency in plaintiff's Federal income tax for 1949, based upon an administrative determination that there should be included in plaintiff's "adjustment for certain reserves" 3¼ percent of the $2,469,553.50 representing the amount of plaintiff's accrued but unpaid liabilities in respect of unsettled policy claims on cancellable health and accident contracts. This deficiency, in the amount of $30,498.99, plus interest thereon in the amount of $8,274.84, or a total of $38,773.83, was paid by plaintiff on July 20, 1950.

The claim for refund which plaintiff filed on or before December 26, 1956, with respect to its 1949 income tax, as indicated in an earlier part of this opinion, included an item relative to the refund of the $38,773.83 (plus interest) re-

2. The normal-tax net income of life insurance companies in 1949 consisted of interest, dividends, and rents, less investment and real estate expenses, including taxes and depreciation.

ferred to in the preceding paragraph. The Internal Revenue Service did not allow this phase of plaintiff's claim, and it is included in the present litigation.

Plaintiff calls attention to the fact that the heading of section 202(c) of the Internal Revenue Code of 1939, as amended in 1942, was "Adjustment for Certain Reserves." Plaintiff also says that the committees of the Congress in charge of the proposed legislation that later enacted the 1942 version of section 202(c) referred to "unearned premiums" and "unpaid losses" as "these reserves" in discussing the particular provision (H. Rep. No. 2333, 77th Cong., p. 112; S.Rep. No. 1631, 77th Cong., p. 142). Plaintiff then cites court decisions—e. g., Commissioner v. Monarch Life Ins. Co., 114 F.2d 314, 319 (1st Cir., 1940)—holding that, in the technical sense, insurance reserves are sums set up and maintained for the purpose of liquidating claims which are (among other things) unaccrued.

On the basis of the factors outlined in the preceding paragraph, plaintiff argues that the term "unpaid losses" in section 202(c) of the Internal Revenue Code of 1939, as amended, should be construed as being limited to reserves for unaccrued losses under the policies mentioned in the statutory provision.

Plaintiff, in effect, is asking the court to amend section 202(c) of the Internal Revenue Code of 1939, as amended, by limiting the scope of the plain words, "unpaid losses," used by the Congress.

■ It is fundamental that an unambiguous statute should be given effect according to its plain and obvious meaning, Bate Refrigerating Co. v. Sulzberger, 157 U.S. 1, 36–37, 15 S.Ct. 508, 39 L.Ed. 601 (1895); Christner v. Poudre Valley Cooperative Ass'n, 235 F.2d 946, 950 (10th Cir., 1956). This principle is as applicable to a revenue statute as it is to any other type of legislation. Crane v. Commissioner, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947).

■ Furthermore, the fact that the heading of section 202(c), as amended, contained the word "reserves" could not limit the meaning of the plain language used in the text of the statutory provision. Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 528, 529, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947).

■ We conclude that plaintiff is not entitled to recover on the phase of its claim relating to the "adjustment for certain reserves."

## PREPAYMENT FEES

Plaintiff in 1949 held investments in residential and commercial mortgages and in unsecured corporate obligations which contained provisions allowing the obligor to prepay the mortgage or corporate obligation upon the payment to plaintiff of an amount in excess of the principal amount payable at maturity, plus unpaid interest accrued to the date of the prepayment. Pursuant to such provisions contained in mortgage agreements, plaintiff in 1949 received prepayment fees totaling $542,789.35, and pursuant to the prepayment provisions contained in corporate obligations that were neither in registered form nor with coupons attached, plaintiff in 1949 received prepayment fees totaling $324,753.48.[3]

The amounts of the prepayment fees referred to in the preceding paragraph were not reported by plaintiff as taxable income on its Federal income tax return for 1949. In its first amended answer, defendant asserts that these prepayment fees were erroneously omitted from plaintiff's taxable income, and that the amount due the Government because of such omission should be set off against any recovery by plaintiff on its claim.

In 1949, life insurance companies were taxed under the Internal Revenue Code of 1939, as amended, on their investment income, consisting of interest, dividends,

---

3. Plaintiff also received in 1949 prepayment fees on corporate obligations in registered form or with coupons attached. However, such prepayment fees are not involved in the present litigation, as stipulated by the parties. (Finding 38.) We find no subsequent basis for relieving the defendant of this agreement, as proposed.

and rents. The question whether prepayment fees of the sort involved here were taxable as "interest" was before this court in the case of Equitable Life Assurance Soc. of United States v. United States, 181 F.Supp. 241, 149 Ct.Cl. 317 (1960), cert. denied 364 U.S. 829, 81 S. Ct. 68, 5 L.Ed.2d 56. The question was answered in the affirmative by the court. See also Pattiz v. United States, Ct.Cl., 311 F.2d 947.

█ As there is outstanding a fairly recent decision by this court squarely on the question of whether prepayment fees received by life insurance companies were taxable as "interest" under the Internal Revenue Code of 1939, as amended, it must be concluded that the failure of plaintiff to include in its 1949 return, and pay the tax on, the prepayment fees mentioned earlier in this part of the opinion provides a basis for an offset by defendant against plaintiff's recovery on the foreign tax credit issue.

## COMMITMENT FEES

█ In its first amended answer, defendant also asserted that plaintiff erroneously failed to include in its 1949 taxable income amounts received by it during that year from loan applicants for investment commitments made by plaintiff.

Plaintiff concedes that it erroneously failed to include in its taxable gross income for 1949 the sum of $50,293.43 representing fees received by it in that year for investment commitments. Therefore, this item will also provide a proper basis for an offset against the amount of plaintiff's recovery.[4]

Plaintiff is entitled to recover on the foreign tax credit issue, but defendant is entitled to set off against the amount of plaintiff's recovery the amounts due defendant because of plaintiff's failure to include certain prepayment fees and commitment fees in its taxable gross income for 1949. Judgment is entered to this effect; the amount of recovery and offsets will be determined pursuant to Rule 38(c).

---

4. The defendant's first amended answer also alleged that the plaintiff on its income tax return for 1949 erroneously claimed "deductions as investment expenses for various operating expenses of, and depreciation on, its real estate and offices." However, this allegation was, in effect, withdrawn by the defendant at the pretrial conference.