The EQUITABLE LIFE ASSURANCE
SOCIETY OF the UNITED
STATES

v.

The UNITED STATES.

Nos. 559–58—563–58, 253–60.

United States Court of Claims.

Decided Oct. 14, 1966.

Daniel M. Gribbon, Washington, D. C., attorney of record, for plaintiff, Robert E. O'Malley, Covington & Burling, Washington, D. C., Stuart McCarthy, New York City, of counsel.

Martin B. Cowan, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant, Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

DURFEE, Judge.[*]

In these six cases, plaintiff is suing for refunds of income taxes paid for the years 1950–1955. Each case covers a different year.

Each of the first five cases (Nos. 559-58 through 563-58, covering the years 1950–1954) originally involved a foreign tax credit issue (paragraph 5 of the respective petitions), a prepayment fees issue (paragraphs 6 and 7 of the respective petitions), a contributions issue (paragraph 8 of the respective petitions), a depreciation issue (paragraphs 9 and 11 of the respective petitions), and an adjustment for certain reserves issue (paragraph 10 of the respective petitions). The prepayment fees issue in the five cases was considered by the court on motions by plaintiff and by defendant for a partial summary judgment. The court's decision, rendered on March 2, 1960, was favorable to defendant, with the result that plaintiff's motion for a partial summary judgment was denied, defendant's motion was allowed, and paragraphs 6 and 7 of the respective petitions were dismissed (Equitable Life Assurance Society of United States v. United States, 181 F.Supp. 241, 149 Ct. Cl. 316, cert. denied 364 U.S. 829, 81 S.Ct. 68, 5 L.Ed.2d 56 (1960)). Subsequently, the contributions and depreciation issues in the five cases were settled administratively pursuant to an agreement of the parties, and a stipulation of dismissal with respect to paragraphs 8, 9 and 11 of the respective petitions was filed on May 27, 1964.

The developments previously mentioned have left for disposition by the court the foreign tax credit issue and the adjustment for certain reserves issue in the first five cases. The sixth case (No. 253-60), covering the year 1955, involves only the foreign tax credit issue.

A joint trial was held in October 1964 for the reception of evidence bearing on the issues that had not been disposed of theretofore.

■ Neither side presented any evidence at the trial relative to the adjustment for certain reserves issue. Since plaintiff, as the party seeking a tax refund, has the burden of proving its right to recover on this issue (United States v. Anderson, 269 U.S. 422, 443, 46 S.Ct. 131, 70 L.Ed. 347 (1926)), paragraph 10 of the respective petitions in cases Nos. 559-58 through 563-58 are hereby dismissed for lack of prosecution. Both sides presented evidence at the trial relative to the foreign tax credit issue now before us which is involved in all six cases.

This issue is whether taxes paid by an American mutual life insurance company during the years 1950 through 1955 to Canadian provinces and the Dominion of Canada, which are based upon a percentage of premiums collected within these tax jurisdictions, are taxes paid "in lieu of a tax upon income," under Section 131 of the Internal Revenue Code of 1939, as amended. This section provided in subsections (a) and (h) that, in the case of a domestic corporation, its income tax "shall be credited with * * * the amount of any income * * * taxes paid or accrued during the taxable year to any foreign country," and that "the term 'income * * * taxes' shall include a tax paid in lieu of a tax upon income * * * otherwise generally imposed by any foreign country" (56 Stat. 856, 858). When the 1939 Code was superseded by the Internal Revenue Code of 1954, the provisions referred to in the preceding sentence were incorporated without substantial change in Sections 901 and 903 of the 1954 Code (68A Stat. 285, 287).

In the case of Prudential Insurance Company of America v. United States,

---

[*] Most of the Findings of Fact were prepared by Trial Commissioner Mastin G. White. Although we agree with the Trial Commissioner that plaintiff should re- cover, we reach a different conclusion as to the effect of the historical evidence of the Canadian tax statutes in determining their legal purpose and intent.

319 F.2d 161, 162 Ct.Cl. 55 (1963), this court found that under the pertinent Canadian statutes, Prudential in 1949 was excused from paying the respective income taxes imposed by the Dominion of Canada, and by Ontario and Quebec on the net income or net revenue of corporations, but that Prudential was required to pay, and did pay to each of these jurisdictions a tax measured by a fixed percentage of total life insurance premiums received therein.

The court concluded that the taxes on insurance premiums which Prudential paid to the three Canadian jurisdictions came within the meaning of the phrase, "a tax paid in lieu of a tax upon income," as used in Section 131(h) of the 1939 Code, as amended, and that plaintiff was entitled to utilize the premiums taxes paid in Canada as a credit against its 1949 United States income tax.

Subsequently, in Prudential Insurance Company of America v. United States, 337 F.2d 651, 167 Ct.Cl. 598 (1964), this court again considered the foreign tax credit issue with respect to premiums taxes of two percent which Prudential had paid to the Province of Ontario for the years 1950 and 1951, to the Province of Quebec for the period 1950–1956, and to the Dominion of Canada for the period 1950–1956. The foreign tax credit issue was presented to the court on motions by the parties for a partial summary judgment.

Subsections (a) and (h) of Section 131 of the 1939 Code, as amended, were superseded by Sections 901 and 903 of the 1954 Code for the latter part of the period involved in the second *Prudential* case, but, as indicated earlier in this opinion, there actually was no change of substance in the pertinent provisions of United States law.

The court, in its second *Prudential* opinion, observed (337 F.2d pp. 652, 653, 167 Ct.Cl. pp. 600–601) that the Quebec statute involved in the second case was the same statute that had been involved in the first *Prudential* case; that although the Ontario statute involved in the first *Prudential* case had been re-

placed by a new statute in 1950, the provisions of the two statutes relevant to the issue before the court were almost identical; and that the Dominion statutes applicable to the first *Prudential* case were either identical with, or very similar to, the Dominion statutes pertinent to the second *Prudential* case. Defendant had also argued that no mutual insurance company was regarded in Canada as a profit-making concern and subject to income tax. The court decided that American mutual life insurance companies were regarded as taxable profit-making concerns under Canadian law.

The court concluded that the decision in the first *Prudential* case should govern the disposition of the second case under the rule of *stare decisis*. Accordingly, the court granted plaintiff's motion for a partial summary judgment on the foreign tax credit issue, and denied defendant's cross-motion.

The present litigation involves claims by another American insurance company, The Equitable Life Assurance Society of the United States, for income tax refunds on the basis of premiums taxes which plaintiff paid at the rate of two percent to the Province of Ontario for the period 1950–1952, to the Province of Quebec for the period 1950–1955, and to the Dominion of Canada for the period 1950–1955. Thus, the present litigation involves the same years 1950–1955, that were involved in the second *Prudential* decision, except that the latter also covered the year 1956 in addition to the period 1950–1955; and it also involves a mutual life insurance company.

Although the relevant facts and statutes now before us are identical or closely similar to those in the two previous *Prudential* decisions, the Government now urges that the history of premiums taxes and income taxes in Canada should cause us to reverse our former position. Defendant has presented a long and exhaustive analysis of this tax history, purporting to show that as a matter of historical fact, plaintiff and other American insurance companies doing

business in Canada were not exempted from the payment of Canadian income taxes because they paid premiums taxes there, and conversely, that the imposition of Canadian premiums taxes on plaintiff and other similar American insurance companies was not due to the circumstance that they were exempted from the payment of Canadian income taxes.

The Government again urges, as it did in the earlier *Prudential* cases, that historical analysis of the tax statutes demonstrates that Canadian premiums taxes did not come within our statutory category of "a tax paid in lieu of a tax upon income." This historical tax record was as readily available to the Government in its defense of the two previous *Prudential* cases as it is now in the present case. Much of this same record was presented by defendant in these two prior cases, and considered by the court. As we said in the second *Prudential* case (337 F.2d at p. 654, 167 Ct.Cl. at p. 604):

> \* \* \* we are persuaded *by the history* and terms of the various Canadian taxing acts that these premiums taxes were paid "in lieu of" income taxes imposed on others. [Emphasis supplied.]

Certainly, the essential element of legal continuity applicable to these three identical cases would justify us to again invoke the rule of *stare decisis*.

There is nothing before us to cause the court to now view either of the prior *Prudential* decisions as being in error; in fact, the Government never sought reconsideration or review of either decision. It is now rather late in the game for defendant to ask the court to reconsider the same issue, but in view of numerous important cases pending before the court involving the same point, public policy in this instance warrants a full review of the more extensive record of the legislative history of the Canadian tax statutes now before us.

As we said in the second *Prudential* case before deciding that the case was governed by the rule of *stare decisis* established in the first case:

> \* \* \* If such a comparison shows the statutes to be identical or substantially the same, and if defendant has shown no changes in related factors or circumstances we must, under the well established rule of *stare decisis,* grant plaintiff's motion. If, on the other hand, the statutes are not the same, or if defendant has effectively shown the existence of certain related factors not known at the time of the previous case, then such nuances and/or new evidence must be evaluated before final disposition of these motions. (337 F.2d at p. 652, 167 Ct.Cl. at p. 601)

The record of legislative history and origins of the taxes in question establishes that provincial premiums taxes were imposed in Canada upon mutual life insurance companies long before the enactment of provincial corporate income tax statutes, and the Dominion did not impose premiums taxes upon such companies until years after it adopted an income tax of general application. The Province of Quebec imposed premiums taxes in 1875, but did not enact a general income tax until 1932. Ontario's first premiums tax was enacted in 1889; its first general income tax statute came in 1932. With some variations as to timing and language, the relevant tax history of the other Canadian provinces followed this same pattern. By 1941 all of the provinces had in effect both a premiums tax applicable to insurance companies, and a general income tax, generally with an express provision that insurance companies paying the premiums taxes were not liable for payment of the general corporate income tax. In Alberta insurance companies were permitted a credit against their income tax liabilities for the amount of premiums taxes paid by them. In British Columbia, the Income Tax Act imposed a premiums tax on life insurance companies "in lieu of all tax otherwise imposed by this Act."

Prior to 1941, the Dominion of Canada never imposed any premiums or income taxes on mutual life insurance companies, although a general tax on incomes

was in effect since 1917. In 1942 all of the provinces repealed or suspended the operation of most provincial taxes, including premiums taxes, corporation income taxes and other forms of corporate taxation under their "Wartime Tax Agreements" with the Dominion, effective for the year 1941. These agreements remained in effect until 1947, and were then extended pursuant to "Tax Rental Agreements" through 1951, except as to Ontario and Quebec. A new series of "Tax Rental Agreements" extended this arrangement through 1956 except as to Quebec. During this 16-year period from 1941 through 1956, the Dominion did not impose any net income taxes on mutual life insurance companies, but did impose premiums taxes at rates approximating the prior provincial rates. During the years at issue in this case, the Dominion did impose a corporate income tax of general application, from which a mutual life insurance company was completely exempt, and plaintiff was not assessed or required to pay any corporate income taxes under Part I of the Dominion Income Tax Act. The Dominion statutes involved are the same, or almost identical with those involved in the two *Prudential* cases, supra.[1]

In 1956, pursuant to the Federal-Provincial Tax Sharing Arrangements Act, the Dominion repealed its premiums tax provision, effective for 1957 and subsequent years, in order that the provincial governments could again impose their own premiums tax.

During the years at issue in this case, 1950 through 1956, plaintiff has paid premiums taxes to the Provinces of Ontario, Quebec, and to the Dominion, and has never been assessed or required to pay, and has never paid, any corporate income taxes in any of these three tax jurisdictions.

Although nearly all of the historical record of the origin of the identical tax statutes has already been reviewed by the court in the two *Prudential* cases, supra, we have made new findings based on the more extensive historical record in the present case.

The historical development in the provinces clearly demonstrates that, by 1944, premiums taxes were consistently imposed upon mutual life insurance companies, whereas general income taxes were never imposed thereon, and that in 1942 the Dominion adopted this same choice of tax method. This is not a novel concept. Most of our own states follow a similar system as to mutual life insurance companies, a premiums tax is accepted in lieu of income taxes, even though the imposition of the premiums taxes predated the income taxes. For example, in the District of Columbia itself, sections 47–1554(g) and 47–1806 (1961 ed.) of the District of Columbia Code specifically provides that the premiums tax shall be in lieu of income and most other taxes.

■ What defendant in essence argues is that because enactment of the premiums taxes came first, and only provided an excise tax for doing business, this has no connection with the later enactment of income taxes; therefore it cannot be "in lieu of" income taxes. Originally, this may have been correct. However, the circumstances under which one tax originates are not necessarily determinative of its relationship to another tax which originates at a later date. Constant and current review of fiscal and economic conditions is essential to tax legislation in the light of potential sources of Governmental revenue and changing needs for revenue. The most relevant legislative history before us now is not found in the earlier origins of

---

1. The only taxes paid by Equitable to the Dominion under the Income Tax Act during the years 1950 through 1955 were those taxes paid by it during the years 1954 and 1955 pursuant to Part III of the Income Tax Act. Part III imposes a tax at a flat rate—normally 15%—on the investment income of nonresidents.

Equitable, as a foreign insurance company, was required under the Canadian insurance laws to maintain assets in Canada equal to its Canadian liabilities and it was required to pay the Part III tax only on its income from Canadian investments in excess of 110% of such required reserves.

these two methods of taxation in Canada, but it began when a cognizant and deliberate choice was first made by the Canadian legislatures between the application of premiums taxes or income taxes for mutual life insurance companies. This choice was first made by the Canadian provinces at various times generally in the 1930's, as they recognized the income tax as an increasingly effective and necessary method of raising revenue.

The court has already analyzed the basis upon which that choice was made, and thereafter affirmed in Quebec and Ontario in the two *Prudential* cases, supra, which was typical of the actions taken by the provincial legislatures. In the first *Prudential* case, the court said (319 F.2d at pp. 163, 164, 162 Ct.Cl. at pp. 60–61):

> The Ontario premiums tax for 1949 was imposed by section 4 of The Corporations Tax Act of Ontario (3 Geo. VI (1939), c. 10, as amended). That section declared in subsection (1) that "Every insurance company shall pay a tax in respect to life insurance premiums of two per centum calculated upon the gross premiums received during the fiscal year from policyholders resident in Ontario," excluding premiums returned and certain other items. The same statute provided in subsection (1) of section 14 that " * * * every incorporated company * * * which transacts business in Ontario, shall for every fiscal year of such company pay a tax of seven per centum calculated upon the net income of the incorporated company;" but subsection (3) (h) of section 14 expressly provided that "Any incorporated company paying taxes under this Act as * * * [an] insurance company" should not be subject to the tax imposed by section 14. Therefore, plaintiff was excused from paying the Ontario tax calculated on the net income of corporations because it was an insurance company paying a premiums tax under another section of the same statute. It seems obvious

that if the Ontario premiums tax was not an "income" tax, it was certainly a tax paid "in lieu of" income tax and, therefore, that it clearly came within the scope of subsection (h) of section 131 of the Internal Revenue Code of 1939, as amended.

This conclusion by the court is further fortified by the fact that when the Ontario legislature was considering the enactment of the 1939 Corporations Tax Act, the bill which ultimately became law was accompanied by the following "Explanatory Note" regarding subsection 3 of section 14 of the Act:

> "Subsection 3. This subsection groups all classes of companies which are exempt from tax calculated on net income and corresponds to subsections 5 and 6 of section 4 of the present Act. The exemptions are as nearly as possible those provided in the Dominion Income Tax Act. Banks, *Insurance Companies,* Railway Companies, Telegraph Companies, Telephone Companies, Express Companies and Companies operating sleeping, parlour or dining cars on railways *are specially taxed under earlier provisions of this Act and are therefore exempt from the tax, calculated on net income imposed herein,* * * *"  (App. B, p. 19 of Bill No. 54; App. C, p. 19 of Bill No. 54). [Emphasis added.]

Again, in the first *Prudential* decision, supra, we said as to Quebec:

> The premiums tax which plaintiff paid to the Province of Quebec for 1949 was imposed by subdivision 3 of section 3 of the Quebec Corporation Tax Act (11 Geo. VI (1947), c. 33). This subdivision imposed on "every insurance company, a tax of two per centum on every premium received by the company * * * in respect of the business transacted in Quebec." Other subdivisions of section 3 (it contained a total of 19 subdivisions) imposed taxes of various kinds on other types of companies, such as banks, loan companies, navigation companies, etc. Then section 6 of the same statute provided that "every company * * *

contemplated by subdivisions 1, 4, 5, 6, 7, 8, 11, 13, 14, 15, 16, 17, 18 and 19 of section 3 * * * shall pay annually a tax equivalent to seven per centum of the net revenue of their respective financial year * * *." The failure of section 6 in the portion just quoted to refer to subdivision 3 of section 3, covering insurance companies, had the effect of excusing insurance companies from the payment of the 7 per cent tax on net revenue imposed by section 6. (At p. 164 of 319 F.2d, at p. 61, of 162 Ct.Cl.)

Plaintiff in the present case was "otherwise specially taxed" as an insurance company in Quebec under subdivision 3 of section 3, and was not required to pay, and in fact did not pay, any income taxes under section 6 of the Quebec statute during the years 1950 through 1955.

In the first *Prudential* case, supra, the court also dealt with premiums taxes paid to the Dominion of Canada in 1949. (There is no significant difference between the relevant tax statutes at that time and during 1950 through 1955.)

At pp. 164, 165 of 319 F.2d at pp. 61, 62 and 63 of 162 ct. cl.:

> The premiums tax which plaintiff paid to the Dominion of Canada in 1949 was payable under the Dominion's Excise Tax Act (Rev.Stat. of Can. 1927), c. 179, as amended. That act provided in section 14(1) that "Every company authorized under the laws of the Dominion of Canada or of any province thereof to transact the business of insurance * * * shall pay to the Minister a tax of two per centum upon the net premiums received by it in Canada less net premiums paid for reinsurance to companies or associations to which this section applies * * *." The term "net premiums" was defined to mean "in the case of a company transacting life insurance, the gross premiums received by the company other than the consideration received for annuities, less premiums returned and less the cash value of the dividends paid or credited to policyholders." However, an insurance company was

permitted to deduct the amounts of any premiums taxes paid to any Provinces of Canada, and in 1949 only the Provinces of Ontario and Quebec were imposing such taxes. Another statute of the Dominion of Canada, The Income Tax Act (11–12, Geo. VI (1948), c. 52, as amended), imposed in section 36 a tax on the net income of corporations, the rate on the taxable income, or on the taxable income earned in Canada, being 10 percent of the first $10,000 and 33 percent of amounts over $10,-000. However, it was provided in section 29 of The Income Tax Act that the taxable income of a life insurance corporation should be "the aggregate of the amounts credited to shareholders' account or otherwise appropriated for on account of shareholders during the year," less certain specified amounts. As plaintiff is a mutual insurance company, it does not have any shareholders; and accordingly, it was excused by section 29 of The Income Tax Act of Canada from paying the income tax imposed on corporations by that act.

Thus, it will be seen that plaintiff in 1949 was excused from paying the respective income taxes imposed by the Provinces of Ontario and Quebec and by the Dominion of Canada on the net income or net revenue of corporations, but that plaintiff was required to pay, and did pay, to each of these jurisdictions a tax measured in terms of its gross income or gross sales, i. e., on premiums received.

We conclude that the tax on insurance premiums which plaintiff paid within the three Canadian tax jurisdictions involved was "a tax paid in lieu of a tax upon income * * * otherwise generally imposed" within these three foreign tax jurisdictions, within the meaning of sec. 131(h) of the Internal Revenue Code. * * *

The Dominion Parliament first exempted life insurance companies from income tax because of public policy which recognized the social utility of life insurance and that policyholders should not be made to bear the burden of income

or profits taxes, by means of increased premiums, decreased dividends or otherwise. This was the legislative intent in 1916 when the Dominion enacted an excess profits tax, the first tax on income or profits imposed by the Dominion. The general tax on net incomes was first levied in 1917, and mutual insurance companies were not liable. These same considerations of public policy would appear to account for the fact that life insurance companies were not subject to Dominion premiums taxes until 1941. However, this 1916–1917 concept of public policy does not explain why the Dominion in 1941 first chose to impose premiums taxes on life insurance companies, and to exempt them from income taxes. Clearly, this prior concept of public policy was changed by the Canadian Parliament in 1941 to require that mutual life insurance companies pay substantial taxes in support of Dominion governmental activities. To effectuate this obvious purpose, the Dominion chose to impose the premiums tax and not the existing general corporate income tax from a source hitherto exempt from Dominion taxes. In so doing, the Dominion was making the same deliberate selection between a special method of raising revenue and a general method that had been already made by the provincial governments as to mutual life insurance companies. In other words, both the Dominion and the provinces decided to impose or retain the premiums taxes because these insurance companies were not being asked to pay income taxes, and it was thought that adequate taxes should be paid by these companies as well as by the other businesses which were subject to the income tax. For the purposes of the Internal Revenue Code's foreign tax credit, that is enough to characterize the premiums taxes as imposed "in lieu of" income taxes.

■ Defendant has again asserted its argument that premiums taxes may not be credited against taxpayers' United States income taxes because they were imposed on or with respect to underwriting receipts on life insurance not taxed in the United States. As we noted in the first *Prudential* opinion, this distinction was eliminated by the amendment of section 131(a) of the 1939 Code to allow as a foreign tax credit a tax paid "in lieu of a tax upon income," which contemplated a tax measure by gross income or gross sales which are clearly analogous to life insurance premiums. The income of life insurance companies has not been taxed under the *general* provisions of the Internal Revenue Code, but by various formulae in lieu of the general income tax, generally by the application of a selected rate to investment income. Sec. 901 to 905, Internal Revenue Code, 1954.

In neither the United States nor Canada has there been a general tax on income of mutual life insurance companies as was generally applied to other corporations. Canada chose a premiums tax rather than the special formula income tax chosen by the United States to apply to life insurance companies. Sec. 201 (b) et seq. 1939 and Sec. 801 et seq. 1954 Internal Revenue Code. This difference in tax methods or formulae between the tax jurisdictions gave rise to precisely the situation envisioned in the enactment of section 131(a) of the 1939 Code by which the foreign tax "in lieu of" income taxes can be credited on the Federal income tax. The tax formula stated in section 131(a) (sec. 904, 1954 Code), specifically limits the amount of the foreign tax credit; this eliminates the possibility of any windfall to a taxpayer such as defendant contemplates.

■■ Plaintiff has paid both Canadian and United States taxes on its insurance business in Canada. If the foreign tax credit is not allowed for premiums taxes paid in Canada in lieu of income taxes, its Canadian insurance business would be burdened by the double taxation of both the Canadian premiums tax and the full United States tax on income attributable to its Canadian business without any credit for taxes paid in Canada. The foreign tax credit provisions of section 131 of the 1939 Code were expressly enacted to eliminate this possibility.

Section 903 of the regulations under the Internal Revenue Code of 1954, which is virtually identical to the regulations issued under Section 131(h) of the 1939 Code, states that a tax imposed by a foreign country is deemed to be imposed "in lieu of" an income tax under Section 131(h) of the Code if:

(1) Such country or possession has in force a general income tax law,

(2) The taxpayer claiming the credit would, in the absence of a specific provision applicable to such taxpayer, be subject to such general income tax, and

(3) Such general income tax is not imposed upon the taxpayer thus subject to such substituted tax.

In the present case, we conclude that the premiums taxes paid by Equitable for the years involved in each of the Canadian jurisdictions included in this case met all three of these requirements, and that said payments were "in lieu of" income taxes imposed by each of these foreign tax jurisdictions, and accordingly entitled to allowance of credit under the provisions of section 131 of the 1939 Code and section 901(a) of the 1954 Internal Revenue Code.

Durfee and Davis, JJ., dissented.