**METROPOLITAN LIFE INSURANCE COMPANY**

v.

**The UNITED STATES.**

**Nos. 79-59, 444-60, 361-64.**

United States Court of Claims.
April 14, 1967.

Thomas N. Tarleau, New York City, attorney of record, for plaintiff; George E. Walton, Bernard G. Hildebrand, New York City, Robert Holt Myers, Williams, Myers & Quiggle, Washington, D. C., Laurence G. Bodkin, Jr., and Willkie, Farr, Gallagher, Walton & FitzGibbon, New York City, of counsel.

Mildred L. Seidman, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant; Richard M. Roberts, Lyle M. Turner, Philip R. Miller, and Martin B. Cowan, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

DAVIS, Judge.

This is the fourth time in as many years that we are called upon to consider the application of the foreign tax credit (Sec. 131 of the Internal Revenue Code of 1939; Sections 901, 903 of the Internal Revenue Code of 1954) to the Canadian premiums taxes on mutual life insurance companies. See Prudential Ins. Co. of America v. United States, 319 F.2d 161, 162 Ct.Cl. 55 (1963); Prudential Ins. Co. of America v. United States, 337 F.2d 651, 167 Ct.Cl. 598 (1964), pending on petition for a writ of certiorari, 386 U.S. ——, 87 S.Ct. 1375, 18 L.Ed.2d 457 (filed March 30, 1967); Equitable Life Assurance Society v. United States, 366 F.2d 967, 177 Ct.Cl. ——, 386 U.S. ——, 87 S.Ct. 1375, 18 L.Ed.2d 457 (Oct. 1966), pending on petition for a writ of certiorari, (filed March 13, 1967). In that series of decisions we held that various of these premiums taxes imposed by the Dominion, Ontario, and Quebec for 1949 through 1956 were paid "in lieu of a tax upon income" and were therefore available for the foreign tax credit. Here, the Metropolitan Life Insurance Company claims (in three companion cases) the same treatment for premiums taxes paid variously for 1946 and 1949–1957 to the Dominion, Ontario, Quebec, Manitoba, Newfoundland, Nova Scotia, and Prince Edward Island.[1] The parties have agreed that the relevant statutes of the Dominion, Quebec, and Ontario are the same for the years 1949–1956 as in the earlier cases; without serious dispute we find this also to be true of 1946 and

1957.[2] For the fourth time we uphold the taxpayer. In this opinion we do not retrace our steps; the Government's successive arguments in the prior cases have already been answered and need not be discussed again insofar as they are repeated *pro forma*. We limit ourselves to the contentions pressed in the current round.

One of the points the Government urges strongly is that Congress intended the "in lieu" part of the foreign tax credit to apply only to so-called "empirical" income taxes—those clearly seeking to levy solely on net income but using a simplified or convenient formula or method for calculating such profit in order to avoid the administrative difficulties of ascertaining a nonresident's net income within the country. The legislative history of the 1942 amendment adding the "in lieu" provision is said to demonstrate that the Congressional purpose was to extend the credit only that far and no further. See the Senate report quoted in Prudential I, supra, 319 F.2d at 162–163, 162 Ct.Cl. at 58–59; Statement of Mitchell B. Carroll, representing the National Foreign Trade Council, Hearings before the Senate Committee on Finance on the Revenue Act of 1942, 77th Cong., 2d Sess. 206, 207–208, 210–212, 214–217.[3]

We do not interpret this history as confining the "in lieu" amendment to specific foreign taxes which can be characterized as "empirical" or administrative or "short-cut" attempts to reach the same figure as the normal foreign income tax would bring if it could more easily be calculated. These were, it is true, the main examples given by the spokesman for the National Foreign Trade Council

---

1. Together, the three cases cover premiums taxes paid to the Dominion in 1946 and 1949 through 1957; to Quebec in 1949 through 1957; to Ontario in 1949 through 1952 and 1957; and to the other provinces in 1957.

2. The case of the other provinces for 1957 is discussed infra.

3. Mr. Carroll proposed an extension of the foreign tax credit beyond the "income, war profits and excess profits taxes" which the statute then covered. Defendant relies on his statements referring, e. g., to an "empirical tax" specifically levied as "a short-cut method to facilitate the determination of liability to the tax on net income."

(Mr. Carroll), but he also referred to a Guatemala statute exempting from the general income tax companies which had their taxes fixed by *contract or law* (citing the agreement of an American company to have its exported agricultural commodities taxed at 1½ cents per unit), and he observed, generally, that "the income-tax laws or decrees of various Latin-American countries provide for taxation on an *arbitrary* basis in lieu of the tax on net income" (emphasis added).[4] Above all, he emphasized the over-riding aim of the foreign tax credit to forestall double-taxation of the earnings of the American company on foreign soil—first by the other country and then by the United States. See American Chicle Co. v. United States, 316 U.S. 450, 452, 62 S.Ct. 1144, 86 L.Ed. 1591 (1942).

In recommending the extension of the credit, the Senate committee report (S. Rep. No. 1631, 77th Cong., 2d Sess. 131–32 (1942–2 Cum.Bull. 602)) refers to substitute taxes (measured by gross sales, gross income, or number of cents produced) "growing out of the administrative difficulties of determining net income on taxable basis" within the foreign country, but it does this only by way of example (the report commences this reference by "Thus") showing that our then internal revenue law recognized only foreign taxes imposed "upon a basis corresponding approximately to net income" under the American concept of that term. Without indicating that this illustration of non-income taxes levied because of

"administrative difficulties" was the only one it wished to cover, the committee simply said that it "deemed it desirable to extend the scope of this section" (the foreign tax credit) and recommended the broad language of the "in lieu" provision as we now have it.

■ These capsule observations do not persuade us that Congress excluded "in lieu" taxes imposed by a foreign country, not because of administrative or computation or "empirical" difficulties, but because it was considered bad policy or inconsistent with the country's legal theory to levy the normal income tax upon a particular class of company.[5] In the "in lieu" modification, Congress continued and expanded its prime purpose of preventing double taxation of the American company's foreign income.[6] This was now to be done by allowing the credit for any alien tax imposed instead of an income tax (if the latter was generally levied) for whatever reason the other country might consider it proper to substitute the "in lieu" levy in the special case for the ordinary income tax generally imposed. Cf. Owen, The Foreign Tax Credit 77 (1961). In that way there would be no discrimination against the American company abroad which is exempted from the ordinary foreign income tax—for administrative convenience or for reasons of policy or of legal theory—but is instead required to pay another type of tax in order to contribute to the other country's revenues.[7] There need be

---

**4.** The Senate hearing took place in 1942, in the midst of World War II when practically the only foreign trade of this country was with Latin America.

**5.** As indicated in our prior decisions, especially *Equitable*, this is how we view the Canadian premium taxes on mutual life insurance companies.

**6.** It is not uncommon for Congress to bar double taxation by means of a credit rather than a simple deduction of the other tax. The District of Columbia Income Tax Act, for instance, allows a credit for income taxes or intangible personal property taxes paid by District residents to their own states.

**7.** Defendant makes something of the earlier rejection, by the House Committee on Ways and Means, of the National Foreign Trade Council's more-inclusive proposal for a credit for *any* foreign taxes measured "by income or receipts, including statutory income." (Hearings on the Revenue Revision of 1942, House Ways and Means Committee, 77th Cong., 2d Sess. 578–79). But this initial suggestion far out-ran the proposal in the Senate or the final "in lieu" amendment. It was not restricted to such taxes imposed

no functional connection between the foreign income tax and the "in lieu" tax; no coordination of rates; no effort to approximate the amount of the general income tax or to reach the same subject matter or to replace the normal formula for computing income by a special formula designed to achieve the same or roughly the same amount. If that had been the perimeter of the Congressional objective, it would only have been necessary to declear that "income, net profits and excess profits taxes" shall include taxes which "in effect" or "approximately" or "in substance" reach income and profits— rather than to provide, as Congress did, coverage of *all* taxes paid "in lieu" of income taxes otherwise generally imposed. Congress seems to us to have recognized that taxing jurisdictions, exempting a type of business from the ordinary income tax, often substitute a wholly separate tax grounded in another theory and yielding a different amount.[8] The credit against our income tax is to be kept within reasonable bounds, and tied to the fundamental purpose of preventing double taxation, by the continuance of the limitation (see 1954 Code § 904) allowing the credit "only if and to the extent the taxpayer has net income from sources within the foreign country or from sources without the United States, as the case may be." S.Rep. No. 1631, supra, p. 132. See Equitable, slip op. p. 13, 366 F.2d at 974.

The sovereign inquiry, then, is "whether the tax was levied by the foreign country in place of or instead of or as a substitute for some existing income or profits tax." United States v. Waterman S.S., 330 F.2d 128, 131 (C.A.5, 1964), reviewed on another point, 381 U.S. 252, 85 S.Ct. 1389, 14 L.Ed.2d 370 (1965). See, also, Compania Embotelladora Coca-Cola, S. A. v. United States, 139 F.Supp. 953, 955, 134 Ct.Cl. 723, 727–728 (1956). If the Canadian jurisdictions with which we are now concerned had all said explicitly that for mutual life insurance companies the premiums tax was in lieu of the general income tax, as some jurisdictions have,[9] there would be no question, we feel sure, that the foreign tax credit would be allowable here.[10] In our prior decisions we have held that, without saying so explicitly in the legislation, this is what the Dominion and the prov-

---

"in lieu" of or in substitution for the ordinary income tax but would have included all gross receipts or sales taxes; nor did it require that the foreign nation have an income tax "otherwise generally imposed."

8. In other parts of the very Revenue Act which adopts the "in lieu" amendment to the foreign tax credit, Congress expressly used the "in lieu" locution to refer to taxes which would clearly impose very different amounts upon the taxpayer. See, *e. g.*, Sections 185 and 222 of the Revenue Act of 1942, 56 Stat. 798, 895, 914.

9. The British Columbia legislation states expressly that the premiums tax is in lieu of both the income and the personal property taxes otherwise imposed by that province. See finding 29 in Equitable, 366 F.2d 967, 177 Ct.Cl. at ——. In Newfoundland, in the event the province again imposed income taxes itself, the 1957

premiums tax was declared to be "deemed to be in lieu of all other taxes imposed under The Income Tax Act", as was the earlier premiums tax (*Equitable*, finding 46(5)). In Ontario, the legislature indicated, in 1937, that insurance companies were "specially taxed" by the premiums tax "and are therefore exempt from the tax calculated on net income imposed herein." Equitable, supra, 366 F.2d at 972, 177 Ct.Cl. at ——. In the United States, the District of Columbia Code specifically provides that the premiums tax shall be in lieu of income and most other taxes.

10. Congress is not unfamiliar with a specific statement that one tax is "in lieu" of another. The Internal Revenue statutes have declared in express terms that certain federal taxes are "in lieu" of others. See Sections 211, 231 of the 1939 Code and Sections 871, 881 of the 1954 Code (up to 1966), and see the District of Columbia example cited in the preceding footnote. See also footnote 8, supra.

inces have done, in actual effect, with respect to mutual life insurance companies.

We have found "a very close connection between the imposition of the Canadian premiums taxes involved here and the failure to impose income taxes." Prudential II, 167 Ct.Cl. at 604, 337 F.2d at 654. The Canadian jurisdictions, we also found, made "a cognizant and deliberate choice * * * between the application of premiums taxes or income taxes for .mutual life insurance companies. This choice was first made by the Canadian provinces at various times generally in the 1930's, as they recognized the income tax as an increasingly effective and necessary method of raising revenue." They made a "deliberate selection between a special method of raising revenue [the premiums tax] and a general method [the normal income tax] * *. In other words, both the Dominion and the provinces decided to impose or retain the premiums taxes because these insurance companies were not being asked to pay income taxes [for policy reasons], and it was thought that adequate taxes should be paid by these companies as well as by the other businesses which were subject to the income tax. * * * In neither the United States nor Canada has there been a general tax on income of mutual life insurance companies as was generally applied to other corporations. Canada chose a premiums tax rather than the special formula income tax chosen by the United States to apply to life insurance companies." Equitable, slip op., pp. 8, 12, 366 F.2d at 972, 974. We concluded that "this difference in tax methods or formulae between the tax jurisdictions gave rise to precisely the situation envisioned in the enactment of the ['in lieu' provision]" and that in these circumstances the Canadian jurisdictions' choice to impose or retain the premiums tax was enough to characterize that tax as imposed "in lieu" of income taxes. Id. at 974.

That conclusion, the Government now urges, must be wrong, at least as to the Dominion levy, because it fails to take into account the signal fact that several types of insurance companies, other than mutual life, have been subjected by the Dominion, in some periods, to the premiums taxes and the income tax. Both the 2% premiums tax and the regular income tax (in whole or in part) have been imposed by the Dominion simultaneously on mutual and stock fire and casualty companies, on resident stock life companies, and on nonresident stock life companies. See Equitable, finding 71.[11] It is said that, for a foreign tax to be "in lieu" of an income tax, all persons subject to the "in lieu" tax must be exempt from the income tax; otherwise, the argument runs, it will be impossible to call the special impost a substitute for the income tax, and moreover grave anomalies will emerge. If the premiums tax is deemed an "in lieu" levy for mutual life companies, the defendant insists that the dilemma is necessarily presented of either "discriminating" between casualty and life insurance by refusing to allow the premiums tax as a credit for the former (leading to the "ironic result" that the casualty company which pays both taxes receives no credit for the premiums tax, while the life company which is subjected only to the premiums tax is allowed the credit), or of permitting the premiums tax as a credit in both instances (and thus, in the casualty case, contravening the foreign tax credit statute which "has consistently been interpreted as requiring that a qualifying tax be imposed in lieu of and not in addition to the income tax").

■ We need not, and do not, forecast the result when companies other than

---

11. Only stock fire and casualty companies paid the full Dominion income tax as well as the premiums tax. The other companies paid regular Dominion income taxes only on various selected items. In the years prior to 1957, all the insurance companies liable to the Quebec and Ontario premiums taxes were exempted from the provincial income tax. Beginning in 1957, those two provinces followed the Dominion practice (see Equitable, finding 69), but only Ontario's taxes for 1957 are involved in the present cases.

mutual life claim a credit for the premiums tax. Such cases are not before us and we do not know the particular arguments and distinctions which can be made. But whatever way those questions may be resolved, we can properly hold, as we have, that for the mutual life insurance business the Canadian premiums tax is "in lieu" of the income tax. There will be no dilemma or discrimination however the other companies are treated. If the premiums tax is disallowed, it will be because the court concludes that—for those firms, in contrast to mutual life companies—the particular pattern of the Canadian legislation shows that this tax is not "in lieu" of "a tax upon income * * * otherwise generally imposed * * *", but is simply an additional levy. In that event it will not be anomalous to exclude the premiums tax from the foreign tax credit; presumably the Canadian income tax (which such a company pays) will supply the credit which mutual life taxpayers must obtain through the premiums tax if at all. If the Canadian statutes point to this difference in treatment, it would not be bizarre to say that in the one context the premiums tax is "in lieu" of the income tax while in the other it is not. The classic name of Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372 (1918), is authority enough that in our law the same designation does not always mean the same thing.

On the other hand, if the premiums tax is allowed for these non-mutual companies it may be because the diminished income tax levied (in most instances) is not "otherwise generally imposed" and the premiums tax is "in lieu" of the normal income tax (cf. Compania Embotelladoa Coca-Cola, S. A. v. United States, 134 Ct.Cl. 723, 139 F.Supp. 953 (1956)), or for some other reason implicit in the Canadian scheme for taxing those companies.[12]

As in this country, there has always been a wide disparity in the ways the various Canadian jurisdictions have taxed different kinds of insurance companies, and those taxes have had their own histories, backgrounds, and patterns on which the result of a foreign credit claim may well depend. In this and the three previous opinions we have been concerned only with mutual life insurance companies and their special treatment by the Dominion and the provinces. We can decide these claims without passing upon, or suggesting the ruling for, the claims of other kinds of taxpayers.

■ Another of defendant's present points is that the Dominion intended Part III of the Income Tax Act (under which plaintiff was taxed beginning in 1953)— not the premiums tax—to be "in lieu" of the regular income tax (Part I of the Income Tax Act). Part III levied a limited income tax on non-residents. For foreign life insurance companies, it placed a flat 15 per cent tax on investment income from Canadian investments exceeding 110% of the reserves they were required to maintain in Canada. See Equitable, slip op. p. 7 n. 1, and findings 55 and 61.[13] This amounted in Metropolitan's case to $4,137.25 in 1956 and $6,393.21 in 1957 (the only payments under Part III in the years now involved). Comparing this minor levy to the United States income tax on nonresidents not doing business here (up to 1966) (Sections 211 and 231 of the 1939 Code and Sections 871 and 881 of the 1954 Code), as well as to our income tax on life insurance companies (Section 201 (c) of the 1939 Code and Section 803 of the 1954 Code), defendant submits that the Part III tax, not the premiums tax,

---

12. We emphasize that we have been determining only the rights of mutual life insurance companies, and that the claims of other types of taxpayers are not at all before us. Our statements about the possible basis for deciding their claims are not intended to intimate any opinion on their merits, one way or the other, but solely to indicate that, however such cases may turn out, the position of the mutual life company will be unaffected.

13. These reserves were to be at least equal in value to the Canadian liabilities.

represents Canada's chosen substitute for the regular income tax imposed by Part I.

We differ from the Government in our understanding of the Canadian legislation in its historical setting. Part III was concerned with nonresidents generally, not with insurance companies. Domestic Canadian mutual life companies were not subject to Part III and paid only the premiums tax. Foreign mutual life firms, like plaintiff, were free of the Part III tax so long as their funds invested in Canada did not exceed the amounts normally derived from and held for the protection of their Canadian life business (see footnote 13, supra). Only when extra funds were invested in Canada did Part III become applicable to the income derived from that excess. This is a very secondary tax, designed to reach a special kind of income, which by no means took the place of the regular Part I tax. It was no more than a small additional income tax. Cf. Compania Embotelladora Coca Cola, S. A. v. United States, supra, 139 F.Supp. at 955, 134 Ct.Cl. 727.

■ A related contention is that, for the purposes of the foreign credit, the Part III tax must be considered an "income tax * * * generally imposed" upon taxpayer and others, and therefore that the "in lieu" provision cannot apply at all since an income tax itself was levied by Canada on this plaintiff. The answer is implicit in what we have already said. At least for mutual life insurance companies, Part III was not an "income tax * * * generally imposed" by the Dominion. For one thing, it was a non-resident's tax; domestic insurance companies did not pay it. In that respect Part III was not comparable to this country's provisions for taxing net investment income of mutual life companies doing business here—a tax which covers domestic firms. Even as a non-resident tax, Part III reached only a limited type of excess investment income in Canada—unlike the American tax on the income of

nonresidents (not engaged here in trade or business). It would distort the application and aims of the "in lieu" portion of the foreign tax credit to characterize this minor and specialized additional tax at an "income tax * * * generally imposed" by Canada.

■ With respect to the 1957 premiums tax levied by Manitoba, Newfoundland, Nova Scotia, and Prince Edward Island, defendant contends that that tax could not have been "in lieu" of an income tax since those provinces did not have any income tax in that year. For 1957 through 1961, they continued to rent their income taxes to the Dominion, and the imposition of the prior provincial income tax was expressly suspended in each instance by the rental agreements and implementing legislation.[14] These prior income tax statutes (i. e., pre-1941) excepted mutual life insurance companies (see *Equitable*, findings 46(3), (5), (6), and (8)), and by 1957 the four provinces had all amended their suspended income tax statutes to continue the specific exemption for life companies paying the premiums tax. These circumstances show, in our view, that the "income taxes * * * otherwise generally imposed" in 1957 were the Dominion's income taxes and the tax "in lieu" of that income tax was the premiums tax of the province. The intimate interrelationship and coordination of the Dominion and the provincial taxes warrant this reading. Metropolitan's tax burden was the same as if both the income tax and the premiums tax had been levied by one jurisdiction, instead of by two working together. The purpose of the foreign tax credit to avoid double taxation is furthered by treating the Dominion income tax and the provincial premiums tax as closely and reciprocally related, just as Canada has done.

■ The last of the arguments defendant emphasizes in this case is that the Quebec and Ontario premiums taxes

14. The four provinces had rented their income taxes to the Dominion since 1942.

were "in lieu" not only of the provincial income tax but also of the provincial tax on capital and places of business. See Occidental Life Ins. Co. v. United States, 250 F.Supp. 130, 133 (S.D.Cal.1965), now on appeal to the Ninth Circuit (No. 21039). We need not decide whether defendant is correct in its interpretation of the Quebec and Ontario taxing schemes because we agree with *Occidental* that the "in lieu" provision does not require the premiums tax to be in lieu of the income tax solely or exclusively. At the least, the premiums tax stood very largely and substantially in the shoes of the income tax; the reciprocal relationship was not merely incidental, tangential, or minor. In precise terms the one was "in lieu" of the other. Neither the text of the foreign tax credit sections, their purpose, or their history persuade us that Congress intended to disallow entirely an "in lieu" tax which does take the place of an income tax simply because it may also be used by the foreign country as a substitute for another, noncreditable, tax. Perhaps that would be the result if we were required to give the "in lieu" aspect of the credit a Procrustean fit, but we do not see the Congressional objective as so iron and rigid. Congress did not wish to discourage foreign trade by American companies but to advance, if not to attain completely, more equal treatment in our tax law of American firms engaged in business abroad.[15]

For these reasons, and on the basis of *Prudential I*, *Prudential II*, and *Equitable*, we hold that plaintiff is entitled to recover and judgment is entered to that effect. Plaintiff's motions for summary judgment are granted and defendant's cross-motions are denied. The amount of recovery will be determined under Rule 47(c).

[15]. Defendant does not again emphasize its past argument that there was no double taxation of income here because, in its view, the premiums taxes were imposed on or with respect to receipts not taxed in the United States. The point was answered in Equitable, 366 F.2d at 974, 177 Ct.Cl. at ——. See also, Dexter v. Commissioner, 47 B.T.A. 285 (1942), acq. 1948-2 Cum.Bull. 1; Helvering v. Campbell, 139 F.2d 865, 870-871 (C.A. 4, 1944); Marsman v. Commissioner, 205 F.2d 335, 343 (C.A. 4, 1953); Brace v. Commissioner, 11 CCH Tax Ct.Mem. 906, 907 (1952); Rev.Rul. 54-15, 1954-1 Cum. Bull. 129; Rev.Rul. 55-505, 1955-2 Cum. Bull. 578; Rev.Rul. 55-504, 1955-2 Cum. Bull. 578. Hubbard v. United States, 17 F.Supp. 93, 84 Ct.Cl. 205 (1936), cert. denied, 300 U.S. 666, 57 S.Ct. 508, 81 L.Ed. 873 (1937), is inapplicable.